# THE ERIE RAILWAY COMPANY

## *v.*

## ADALBERT J. WILCOX.

1. CARRIER—*not bound to agree to deliver goods beyond its line of conveyance.* A common carrier is not bound to assume responsibility for the transportation of goods beyond the terminal points reached by its own conveyances, but may do so.

2. SAME—*evidence of contract to carry beyond its lines.* The acceptance of goods delivered for carriage, marked to a point beyond the terminus of the carrier's line, is construed, *prima facie*, as a contract for through transportation.

3. SAME—*limiting liability by contract.* The carrier may limit its obligation to carry safely over its own lines, or only to points reached by its own carriages, and for safe storage and delivery to the next carrier in the route beyond, although the goods are marked to a point beyond its line. A clause in the receipt given the owner for the goods, so restricting the carrier's obligation, if understandingly assented to by the shipper, will as effectually bind him as if he had signed it.

4. SAME—*release, and its effect.* If a carrier seeks exemption from any common law liabilities incident to its general employment, the contract must be assented to with a view to release the responsibilities imposed; and when the exemption is established, the carrier, in case of loss, will only be responsible on account of actual negligence or willful misconduct. The rule is the same in respect to goods shipped to a point beyond the carrier's own line.

5. SAME—*restriction of liability, by notice, only.* A carrier can not discharge itself from duties which the law has annexed to the employment, by notice alone, to the shipper. The shipper must assent to it, to make it effectual; but it is otherwise in respect to those duties designed simply to insure good faith and fair dealing. There, a notice is sufficient.

6. SAME—*how far liability may be restricted.* The law, on grounds of public policy, will not permit a common carrier of passengers or freight to contract against liability for its own actual negligence, or that of its servants and employees.

7. SAME—*negligence in not forwarding.* Where goods were delivered to a carrier in the State of New York for transportation, and the carrier's agent marked the destination, under the shipper's direction, to " Eckly, Iowa," and, in consideration of reduced rates, the shipper assented to release the carrier and every other company over whose line the same might pass, from all liability for damage, delay or loss of any kind, etc., and the goods safely arrived in Chicago and were handed over to the Illinois Central to be carried to their destination, and the latter company delayed forwarding them, from the fact there could be found no such station as Eckly, and telegraphed back for further directions, during which delay the goods, while safely stored, were burned, without actual negligence on the part of the company, it turning out that the goods were intended to be shipped to " Ackly, Iowa," it was *held,* that neither of the lines of transportation was guilty of actual negligence, and that the shipper could not recover under his contract.

APPEAL from the Circuit Court of Cook county; the Hon. JOHN G. ROGERS, Judge, presiding.

Mr. GEO. WILLARD, and Mr. JOHN N. JEWETT, for the appellant.

Mr. ADOLPH MOSES, for the appellee.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

Whatever contrariety there may be in the decisions of courts in respect to the duties and obligations of common carriers, it is settled, as firmly as any legal proposition can be, such carrier is not bound to assume responsibility for the transportation of goods beyond the terminal points reached by its own conveyances. It is optional whether the carrier will take upon itself the enlarged responsibility of making the connecting carriers its own agents for the transportation of goods, rather than the agents of the shipper.

Although the cases elsewhere are not harmonious, the rule adopted and uniformly adhered to in this State is, the acceptance of goods delivered for carriage, marked to a point beyond the terminus of the carrier's lines, will be construed, *prima facie*, as a contract for through transportation. Notwithstanding the goods may be thus marked, the carrier, by express contract, may limit its obligation to carry safely over its own lines,

or only to points reached by its own carriages, and for safe storage and delivery to the next carrier in the route beyond. A clause in the receipt given to the owner for the goods, restricting the carrier's obligations in this respect, if understandingly assented to by the shipper, will as effectually bind him as though he had signed it. What the contract between the shipper and the carrier is, is a matter of evidence. *Illinois Central Railroad Co.* v. *Copeland*, 24 Ill. 332; *Illinois Central Railroad Co.* v. *Johnson*, 34 id. 389; *Illinois Central Railroad Co.* v. *Frankenberg*, 54 id. 88; *The People ex rel.* v. *Chicago and Alton Railroad Co.* 55 id. 95; *Chicago and Northwestern Railway Company* v. *The People*, 56 id. 365; *Chicago and Northwestern Railway Co.* v. *Montfort*, 60 id. 176; *United States Express Co.* v. *Haines*, 67 id. 137.

But where a carrier seeks exemption from any common law liabilities incident to its general employment, the contract must be assented to with a view to release the restrictions imposed, and when the exemption is established, the carrier, in case of loss, will only be responsible on account of negligence or willful misconduct. The correctness of this proposition is not questioned; but, as we understand the argument, it is, that it should not be rigidly applied in cases like the one in hand, for the reason the carrier was under no obligation to contract to carry the goods beyond points reached by its own lines, and the assent of the shipper is not essential, as no restrictions which the law has annexed to the employment are being released, and notice of a refusal to contract for through transportation, whether assented to or not, will be sufficient. No distinction has been taken in our former decisions between contracts for through transportation and for shipment over the carrier's own lines. In either case, the exemption from the duties and liabilities springing out of the employment must be assented to by the shipper. The only distinction is that indicated in *Oppenheimer* v. *United States Express Co.* 69 Ill. 62: Where the carrier seeks to be discharged from duties which the law has annexed to his employment, a notice, alone, will not be effectual, without the assent of the shipper to the

16—84TH ILL.

attempted restriction, but it is otherwise in respect to those duties designed simply to insure good faith and fair dealing; a notice, alone, if brought home to the knowledge of the owner of the property delivered for carriage, will be sufficient. Without some modification of our former decisions, which counsel virtually concede, we can not distinguish between contracts for through transportation to distant points and more limited ones over the carrier's own lines; and as we have seen, the rule adopted requires the attempted restrictions in regard to the property delivered for carriage shall be assented to by the shipper. Whether the rule adopted by other courts, that holds the carrier only liable to the extent of his own route, and for safe storage, and delivery to the next carrier, is, in itself, more just and reasonable, or better sustained by authority elsewhere, we need not inquire, nor need we concern ourselves as to the reasons that led to the adoption of the rule declared in our former decisions on this branch of the law. It has been so repeatedly declared, and so uniformly adhered to, that the rule ought not to be departed from except for the weightiest considerations affecting the general public welfare.

In this case, the goods to be shipped were delivered to defendant marked for carriage to a point beyond the terminal points of defendant's lines. Nothing was said to the contrary, and as defendant contracted for exemption from loss or damage for itself and other carriers into whose hands the goods might be placed before reaching the destination indicated, it may have induced the belief defendant was contracting for through transportation. It is true, the receipt given limited defendant's duty to safely carry the goods to Cleveland—a point reached by its own conveyances—and for safe storage, and delivery to the next carrier, but the restrictions it contained were not assented to by the shipper. All the evidence this record contains on that question is, the admission the goods were shipped under the receipt, but it does not appear the shipper knew its contents, or assented to any restrictions it may have contained. Whether the contract was in fact one for through transportation or not, was a question of fact to be found from the evi-

dence, and, treating the finding of the court as we would the verdict of a jury, we may regard it as well found under the evidence.

But there is one question of fact in the case on which we think the court found so palpably against the weight of the evidence, the judgment, for that reason, must be reversed.

In consideration of reduced rates, the goods were shipped at the owner's risk, and, by an express contract signed by him, defendant, and every other company over whose line the property might pass before reaching its final destination, were released from all liability for damage, delay or loss of any kind, whether arising from the negligence or fault of any such company, or of its agents or employees. Notwithstanding it is so expressed in positive terms in the release, it is not to be read as providing against losses or injuries occasioned by actual negligence. The law has wisely, and for reasons that concern the public welfare, inhibited a common carrier of passengers or freight from contracting against its own negligence, or that of its servants and employees.

The property was delivered to defendant at Friendship station, on its road, marked on the goods, as well as on the way-bill and on the margin of the receipt given, to be forwarded to "Eckly, Iowa," and, without any unreasonable delay, they were safely delivered at the warehouse of the Illinois Central Railroad Company at Chicago, by the Lake Shore and Michigan Southern Railroad Company, which latter company had received the goods from defendant at Cleveland, in the usual course of business, to be from thence forwarded over the Illinois Central railroad to their destination. But the Illinois Central Railroad Company refused to accept the goods for shipment, because its agents did not know, nor could they find, from the Shippers' Guide or otherwise, there was any such place as "Eckly, Iowa;" and, pending investigation as to that fact, the goods, still remaining in the depot of the Illinois Central railroad, which is conceded to have been reasonably safe, were destroyed by fire. Whether there was such unreasonable delay in reshipping the goods at Chicago as would make

defendant or any connecting company liable for the loss, is a vital question in the case. Under the release in evidence, if there was no negligence on the part of defendant or the other carriers into whose hands the goods came, there can be no liability for the loss of the goods.

All the delay there was in Chicago was occasioned by the misdirection given to the goods. It was intended they should be sent to "Ackly, Iowa," and instead, they were marked to "Eckly, Iowa," and the same direction was indicated, both on the way-bill, and on the receipt given to the owner. But that was no fault of defendant, nor can the slightest negligence be imputed to defendant on that account. The goods were marked to "Eckly, Iowa," by defendant's agent, in the presence of plaintiff, and in exact accordance with his directions. Plaintiff ought, as a matter of common prudence, to have noticed the directions on the goods and upon the receipt in his possession, and the omission to do so was negligence. The mistake that occurred may, therefore, very justly be attributed to his own want of reasonable care.

We can better illustrate the case by regarding the action as having been brought against the Illinois Central Railroad Company, or the Lake Shore and Michigan Southern Railroad Company. The most favorable view that can be taken for plaintiff is, to construe his shipping contract as one for through transportation, and treat the negligence of the connecting carriers as that of defendant. As we understand the law, the rule is, where the contract is for through transportation, the carrier upon whom the loss falls is regarded as acting under the contract made with the first carrier, and may claim the benefit of any exemption from liability in its favor.

No delay was suffered before the goods were tendered to the Illinois Central Railroad Company for reshipment. Had the goods tendered been in good order, and billed or marked to a station on its line of road, it would have been the duty of that company to have received them, and forwarded the same without unreasonable delay. A breach of that obligation would have subjected the company to an action. The reason

assigned for the refusal to accept the goods was, the agents of that company knew of no such place as "Eckly, Iowa," nor could they find any such station on the Shippers' Guide, which they consulted. Whether there was such a place "in from the railroad," they did not know, and had no means of ascertaining that fact. Had this suit been brought against the Illinois Central Railroad Company for not accepting and forwarding the goods when tendered, could it be maintained? The inquiry, we think, must be answered in the negative. Clearly, that company was under no obligation to accept goods for carriage unless marked or billed to some station on its line of road, or to some station on another road in connection with it. So far as the evidence discloses, there is no such place in Iowa, or any where else, as "Eckly." There is such a station as "Ackly," on the Iowa division of the Illinois Central railroad, but the goods were not marked nor billed for that station, and it could not be known they were to be sent there. When it was discovered there was no such place as "Eckly," it was not unreasonable, but highly proper, the carrier should inquire for, and wait for, more specific directions before sending the goods forward. It was prudent to do so.

Nor can we hold, as a matter of law, it was negligence in the agent of defendant, in the first instance, to ship the goods without examining maps, and the "Shippers' Guide," to ascertain whether the direction given to him was correct. It was a direction given by plaintiff, and we do not understand the agent receiving the goods was guilty of the slightest negligence in relying upon it as being entirely accurate. The general direction being indicated, he could, with propriety, send them that way.

Manifestly, the fact that made more specific directions absolutely necessary was the negligent conduct of plaintiff himself. Immediately on the arrival of the goods at Chicago, the railroad agents began inquiry for more definite shipping orders, by telegraph, and in pressing that inquiry, we think, they manifested unusual diligence. Exercising the highest degree of care, no one concerned for his own property

would have done more, and surely the law has not obligated the carrier to any higher degree of diligence. On inquiry, neither plaintiff nor any one acquainted with his affairs could be found at Friendship station from whom any information could be obtained. That fact was the cause of further delay. The answer·to a second dispatch: "Better send them to Ackly," was probably received on Saturday, but too late to be delivered or acted on that day, and before Monday it was too late—the goods were destroyed by fire, then raging with unexampled fury, and that not only destroyed the depot in which they were stored, but a large portion of the city of Chicago.

Regarding defendant, nor either of the connecting carriers, as having been guilty of negligence in the care bestowed upon the goods entrusted to them, the release in evidence is a bar to the action. It was deliberately and understandingly signed by the owner of the property, and he is bound by its terms.

The judgment will be reversed and the cause remanded.

*Judgment reversed.*


Mr. JUSTICE CRAIG and Mr. JUSTICE WALKER: We are unable to concur in either the reasoning or conclusion reached by the court in this case.


Mr. JUSTICE DICKEY: I concur in the judgment of the court in reversing the judgment of the circuit court, but I place my judgment upon grounds other than those stated in this opinion.