# CASES

IN THE

# APPELLATE COURTS OF ILLINOIS.

## SECOND DISTRICT—MAY TERM, 1882.

## CHICAGO AND NORTH WESTERN RAILROAD COMPANY
### v.
### BRADFORD C. CHURCH ET AL.

1. CONNECTING LINES—LIABILITY OF COMMON CARRIER BEYOND ITS LINE—LIMITATION IN RECEIPT.—Where goods are received by a common carrier, marked for transportation to a place beyond its line, and the bill of lading limited the common law liability of the carrier to safe carriage over its own line. *Held*, that the inhibition contained in Chap. 114, § 82, R. S. 1874, does not apply to a case where the carrier is under no obligation at common law to undertake to carry goods beyond its own line.

2. CONTRACT NECESSARY—PRIMA FACIE EVIDENCE OF SUCH CONTRACT—HOW REBUTTED.—No common law obligation attaches to carry safely beyond its own line until there is a contract to carry beyond its line. The mere re-reception by the carrier, of goods, marked for transportation to a place beyond its line, may be *prima facie* evidence of such a contract but the insertion in the bill of lading of a limitation of the contract of carriage to its own line, brought to the notice of and accepted by the shipper, will rebut such evidence.

APPEAL from the Circuit Court of Whiteside county; the Hon. JOHN V. EUSTACE, Judge, presiding. Opinion filed December 28, 1882.

Mr. B. C. COOK, for appellant; that in this State, a common carrier receiving goods marked for transportation beyond its own line, is *prima facie* construed a contract for through transportation, but the carrier may restrict its liability to its

own line, by a clause in the receipt, understood and assented to by the shipper, cited Erie R. R. Co. v. Wilcox, 84 Ill. 239; I. C. R. R. Co. v. Copeland, 24 Ill. 332; I. C. R. R. Co. v. Johnson, 34 Ill. 389; I. C. R. R. Co. v. Frankenberg, 54 Ill. 88; People v. C. & A. R. R. Co. 55 Ill. 95; C. & N. W. Ry. Co. v. Montfort, 60 Ill. 176; U. S. Express Co. v. Haines, 67 Ill. 137; C. & N. W. Ry. Co. v. People, 56 Ill. 365.

Unless the common law forbade appellant from restricting its liability to its own line, the restriction in the bill of lading is not a limitation of its common law liability: U. S. St. Louis Ins. Co. v. Rt. L. V. T. H. & I. R. R. Co. 24 Albany L. J. 514; R. R. Co. v. Pratt, 22 Wall. 123; R. R. Co. v. M'f'g Co. 15 Wall. 318; Darling v. R. R. Co. 11 Allen, 295; Nutting v. R. R. Co. 1 Gray, 502; Burroughs v. R. R. Co. 100 Mass. 26; R. R. Co. v. Berry, 68 Penn. 272; Root v. R. R. Co. 45 N. Y. 524; Babcock v. R. R. Co. 49 N. Y. 491; Convers v. Trans. Co. 33 Conn. 166; Perkins v. R. R. Co. 33 Vt. 673; Express Co. v. Rush, 24 Ind. 403; McMillan v. R. R. Co. 10 Mich. 119; Hoagland v. R. R. Co. 39 Mo. 451; Coates v. Express Co. 45 Mo. 238; Stewart v. T. H. & T. R. R. Co. U. S. C. C. E. D. Mo. 23 A. L. J. 35; Grover & Baker S. M. Co. v. M. P. R. R. Co. 11 Cent. L. J. 65; Watkins v. Terre Haute R. R. Co. 8 Mo. App. 270; Hadd v. Express Co. S. C. Vt. 23 A. L. J. 96.

The delivery of the bill of lading by appellant and its acceptance by appellee at time of the delivery of goods constituted a contract between the parties with conditions contained in bill of lading: Wertheimer v. R. R. Co. 9 Rep. 235; York Co. v. R. R. Co. 3 Wall. 107; Bank v. Express Co., 93 U. S. 174; Grace v. Adams, 100 Mass. 505; McMillan v. R. R. Co. 16 Mich. 79; Hopkins v. Westcott, 6 Blatchf. 64; Kirkland v. Dinsmore, 62 N. Y. 191

Messrs. BENNETT & GREEN, for appellees; that formerly before the Statute of 1874, Chap. 27, where a common carrier received goods marked to a place beyond its line, without any limitation or express contract as to the place of delivery, the law implied an undertaking to deliver at the place designated,

cited Angell on Carriers, § 95; I. C. R. R. Co. v. Johnson, 34 Ill. 389; I. C. R. R. Co. v Frankenberg, 54 Ill. 88; Mil. & St. Paul R. R. Co. v. Smith, 74 Ill. 197.

Carrier was liable for loss of goods unless the loss was caused by act of God or the public enemy: Cooley on Torts, 640 ; Edwards on Bailments, §§ 532-615; Mil. & St. Paul R. R. Co. v. Smith, 74 Ill. 197.

The delivery of goods to any person other than consignee was negligence:   Angell on Carriers, § 282; Mich. S. & N. I. R. R. Co. v. Day, 20 Ill. 375; Indianapolis & St. L. R. R. Co. v. Herndon, 81 Ill. 143; Am. Ex. Co. v. Greenhalgh, 80 Ill. 68.

Common carrier could not, even by special contract, exempt himself from liability for acts of negligence:  Oppenheimer & Co. v. U. S. Ex. Co. 69 Ill. 62; Price v. O. & S. R. R. Co. 50 N. Y. 213.

Against other common law liabilities carrier might exempt himself, though a notice merely was not sufficient:  W. Trans. Co. v. Newhall, 24 Ill. 466.

Where consignor at the shipping of the goods, received and with full knowledge assented to a bill of lading containing a limitation of carrier's common law liability, he was bound thereby: Field v. C. R. I. R. R. Co. 71 Ill. 458; Anchor Line v. Dater, 68 Ill. 370.

In some States, acceptance of such receipt was *prima facie* evidence of assent: Strohn v. D. & Mil. R. R. Co. 21 Wis. 554.

As to change made by statute: R. S. Tex. 1879, Art. 278; Ia. Code, § 1308; R. S. Ill. 1874, Chapters 27 and 114; Brush v. S. A. & D. R. R. Co. 43 Ia. 554; McCoy v. K. & D. M. R. R. Co. 44 Ia. 424; McDaniel v. Chicago R. R. Co. 24 Ia. 412; M. D. Trans. Co. v. Theilbar, 86 Ill. 71.

Where shipper takes receipt with limitation conditions annexed, and is silent, the presumption is that he relies upon the law for the security of his rights: R. R. Co. v. Mfg. Co. 16 Wall. 318.

Receipt is to be construed strictly against carrier: Edsall v. Camden & Amboy R. R. Co. 50 N. Y. 661; Menzell v. R. R. Co. 1 Dillon, U. S. 531.

Where freight is shipped in a through car and there is a community of interest in the freight of two roads, the first road is liable as on a through freight contract: T. P. & W. R. R. Co. v. Merriman, 52 Ill. 123; I. C. R. R. v. Frankenberg, 54 Ill. 88.

LACEY, J.    The appellants were sued by appellees as common carriers to recover for the loss of sixty-five barrels of flour and eighty-one bags of bran and middlings which they claim the former agreed to transport from Sterling, in the State of Illinois, to North Anson, in the State of Maine, and there deliver to the shippers' order alleging also as a breach that the goods were carried carelessly and negligently and delivered to one C. C. Beal without any order or authority of appellees, and were thereby wholly lost.

The second count in the declaration avers that the goods were to be transported the length of appellant's line from a point in Whiteside county to the city of Chicago and there delivered to the National Dispatch Freight Line at the eastern terminus of the appellant's road.    That the goods were received marked to be delivered to appellees' order at North Anson, Me.    That the Dispatch Line was a connecting common carrier.    That it became the appellants' duty to safely transport the goods to Chicago and deliver them to the National Dispatch Line.    That appellant in delivering the goods neglected to inform that line as to the destination of the goods, and in consequence thereof the goods were lost and were delivered to a person other than the consignees or their agents.

The third count was like the first.    To this declaration the plea of general issue was filed.

There is no evidence to support the second count.

The National Dispatch Line, or Michigan Central Railway Co., one of the connecting lines and designated by the Dispatch Line for the transportation of the freight, had as much notice as to whom the goods were to be delivered as appellant, as shown by the receipt which it had given for the goods. The facts are stated by agreement on file in this case.

The main question seems to be, what was really the contract between the appellant and appellee in regard to the place where the goods were to be delivered.

If the contract was that the goods were to be shipped by the appellant and delivered to the order of the appellees at North Anson, Me., it would be responsible for the safe delivery of the goods as common carriers; on the other hand, if the contract of shipment was that it should only ship the goods to the east end of their line at Chicago and there to deliver them to the National Dispatch Line to be by it transported to their final destination, then appellant's liability would cease at such delivery. The case was tried by the court without a jury upon an agreed state of facts, from which it appears that the shipment was made and bill of lading issued, and at the time given to appellees, with full knowledge on their part of the contents thereof. The material parts of the bill of lading or receipt, are as follows:

"Sterling, Ill., Dec. 15, 1876.

"Rec'd from Church & Patterson in apparent good order, by the Chicago & Northwestern Railway Co., the following described packages marked and numbered as per margin, subject to the conditions and regulations of the published tariff of the said company, to be transported over the line of this railway to ———, and delivered after payment of freight in like good order to the National Dispatch Line—a company or carrier—(if the same are to be forwarded beyond the lines of the company's road), to be carried to the place of destination, it being expressly agreed that the responsibility of this company shall cease at this company's depot, at which the same are to be delivered to such carrier; but this company guarantees that the rate of freight for the transportation of said packages from the place of shipment to ——— shall not exceed ——— per———, and charges advanced by this company, etc.

"It is further especially agreed that for all loss or damage occurring in the transit of said packages the legal remedy shall be against the particular carrier or forwarder only in whose custody the said packages shall be at the time of the happening thereof, it being understood that the Chicago &

Northwestern Railway Co. assumes no other responsibility for their safe carriage or safety than may be incurred on its own road." The receipt was signed by the agent and the packages were marked " Order of Church & Patterson, notify C. C. Beal, North Anson, Maine."

The goods were shipped by appellant to Chicago and there turned over to the Michigan Central R. R. Co. by order of the National Dispatch Line and shipped through to North Anson, Me., by it and the connecting lines and then delivered to C. C. Beal without order, by means of which the goods were lost; judgment was rendered for appellees for $450.36.

It is claimed on the part of the appellant that by the receipt and bill of lading delivered at the time of shipment to appellees, it was not liable for any losses occurring beyond its own lines, that is, beyond Chicago. That the limitation in regard to its liability contained in the receipt was binding on the appellees.

It is claimed on the part of the appellees that no such limitation as that contained in the bill of lading limiting the common law liability which attached to appellant upon receiving the packages marked to be transported outside of this State to safely carry the goods to the point marked thereon, can be valid on account of the inhibition contained in the following statute, viz., Chap. 114, Sec. 82: "That whenever any property is received by any railroad corporation to be transported from one place to another, within or without this State, it shall not be lawful for such corporation to limit its common law liability safely to deliver such property at the place to which the same is to be transported by any stipulation or limitation expressed in the receipt given for the safe delivery of such property." It is contended on the part of the appellant "that there could be no common law liability attach to carry the goods to the State of Maine, beyond the terminus of its own line, unless it actually received them for that purpose."

That there was no common law obligation to receive the goods to be shipped beyond the terminus of its own line. Therefore it is argued that the liability of the appellant might be limited to the damage or loss resulting to the goods while

C. & N. W. R. R. Co. v. Church et al.

on its own line, even by stipulation in the receipt or bill of lading, and not be obnoxious to the provisions of the statute.

We are inclined to hold that the common law liability contemplated by the statute is the common law liability which attaches to the common carrier from the fact of the contract to carry. That it does not apply to a case like this where the carrier is under no obligation at common law to undertake to carry goods beyond its own line. No common law obligation attaches to carry safely according to the rules of the common law until there is a contract for carriage actually made to carry beyond appellant's line. Then and not till then does the common law liability attach to safely carry such distance.

It is true it has been held by the Supreme Court of this State that if the carrier received the goods marked to a destination beyond its own line, that then the presumption of the law is that it was a contract of carriage to the place marked on the goods and all the common law liability attaches. The court say that such is the common law in this State and at present in England, but such is not the rule in many, and perhaps of the most of the States of the Union. This rule was established by the Supreme Court as the law of this State as early as the case of I. C. R. R. Co. v. Frankenberg et al. 54 Ill. 88, and has been adhered to ever since: Erie R. R. Co. v. Wilcox, 84 Ill. 239; the Milw. and S. P. Ry. Co. v. Smith, 74 Ill. 197. The reception of the goods so marked is, as was said by the court in Erie R. R. Co. v. Wilcox, *prima facie* evidence of through carriage subject, it must be presumed, to be controlled by a different contract. The taking possession of the goods for shipment and the bill of lading may be one and the same transaction and the bill of lading may explain the *prima facie* case of through carriage resulting from the reception of the goods marked "through." And in this case according to the agreement we think it does. The receipt shows that the appellant was only to carry the goods to the end of its own line, and there deliver them to another to be by it transported to North Anson, Me., expressly exempting itself from liability beyond its own line, and the appellees

took and accepted such receipt with full knowledge of its provisions, and we think presumably intending to accept its conditions as the contract. The simple delivery, however, of the receipt to the shipper, would not be conclusive upon him as to the contracts contained in it: Field v. C. R. I. & P. R. R. Co. 71 Ill. 458; Merchants Dis. Trans. Co. v. Leysor, 89 Ill. 43.

Then according to the agreed state of facts at the time the goods in question were received for transportation, it was understood and agreed between the parties that appellant was only to transport the goods from Sterling to the end of its line at Chicago, and that it should not be responsible after its delivery of the goods to the National Dispatch Line. This was the condition upon which the goods were received. They were not then, in the language of the statute, received to be transported beyond the limits of the State.

The statute seems not to prohibit the carrier from contracting by means of a clause in the bill of lading or the receipt for the goods as to the distance they shall be transported, especially if the point be beyond its own line of road.

We think the intention of the statute was to prevent a common carrier from inserting a clause in its receipt which should in any event compel the shipper to relinquish his right to insist on any of the carrier's common law liability when the property was to be carried on the line of the shipper's road, or may be to any point to which the goods had been contracted to be carried, but not to prevent the carrier by means of such clause to limit its contract of carriage to its own line of transportation.

The case of the T. P. & W. R. R. Co. v. Merriman, 52 Ill. 123, is cited by the appellees to show that these goods were shipped as through freight without limitation, but examination of the proof and the facts in that case will show quite a different case from this and we do not think it in point.

The judgment is therefore reversed.