THE ILLINOIS MATCH COMPANY, Defendant in Error, *vs.* THE CHICAGO, ROCK ISLAND AND PACIFIC RAILWAY COMPANY, Plaintiff in Error.

*Opinion filed June 20, 1911.*

1. EVIDENCE—*what question improper as calling for conclusion.* It is error to permit a witness to be asked whether the manufacturing company of which he was secretary had ever consented that it should be bound by the conditions expressed in a bill of lading issued to it for a shipment of goods, but it is not ground for reversal, where the witness answers that he had never, and so far as he knew no other representative of the company had ever, so consented.

2. CONTRACTS—*shipping order and bill of lading are to be construed together.* A shipping order entered on a blank prepared by the shipper and delivered to the carrier, and the bill of lading issued by the carrier on receipt of the order, constitute one contract and will be construed together as one instrument in arriving at the intention of the parties.

3. CARRIERS—*the carrier must show that the shipper assented to restriction.* The rule that the carrier must show that the shipper assented to restrictions of liability in the bill of lading applies where the contract consists of two instruments as well as one; but this does not mean that there must be a verbal contract in addition to the written one, but only that the evidence must show the contract was understandingly entered into by the shipper and its limitations assented to.

4. SAME—*what does not estop shipper from denying assent to restrictions in a bill of lading.* The fact that the shipping order made upon the shipper's own blanks, and which is a part of the contract, states that the shipment is to be delivered by the carrier "as per conditions of company's bill of lading," does not estop the shipper from denying that it assented to the conditions of the bill of lading, even though such would be the rule in ordinary contracts.

5. SAME—*acceptance of shipment by carrier is prima facie a contract to deliver at destination.* Acceptance by a carrier of a consignment marked to a point beyond the terminus of its line constitutes a *prima facie* contract to carry and deliver safely to the place so marked, with all the liabilities and duties of a common carrier; but the carrier may limit its obligation of safe carriage to its own line, and if the shipper assents thereto he is bound.

6. SAME—*limitation in that part of the bill of lading constitut-* *ing the receipt is unlawful.* A limitation of the carrier's common law liability to safely deliver property to its destination is unlawful, under the statute, if it is contained in that part of the bill of lading constituting the receipt for the goods, but it is not unlawful if it is contained in that part of the bill of lading which constitutes the contract, if the shipper assents to the restriction.

7. SAME—*restriction of common law liability requires express* *contract.* A carrier's common law liability cannot be restricted merely by notice of any limitation, and the carrier is bound to receive and carry goods offered for transportation, subject to all the incidents of the employment, unless some exception from liability is given by express contract.

8. SAME—*whether a shipper assented to restriction is always* *matter of evidence.* There is no presumption that a shipper intends to part with any of his legal rights, but if a limitation of liability is understandingly assented to by the shipper it will bind him whether he signs any agreement or not, and the question whether such restrictions have been assented to in any particular case is always a matter of evidence.

9. SAME—*when carrier is entitled to have evidence of shipper's* *assent go to jury.* Evidence that the shipper was engaged in an extensive manufacturing business and constantly shipped car-load lots to points beyond the terminus of the carrier; that it used its own shipping orders, directing shipment "as per conditions" of the bill of lading, and that it constantly received bills of lading containing a limitation of safe carriage to the carrier's own line, raises an inference of assent by the shipper to such limitation, and the carrier is entitled to have such evidence submitted to the jury upon correct instructions as to the law.

10. INSTRUCTIONS—*instructions should be so drawn as to apply* *to the case.* Instructions should be so drawn as to apply to the case to be decided by the jury, but the fact that they are mere statements of rules of law is not ground for reversal, provided they are correct and not misleading as applied to the facts of the case.

11. SAME—*if instructions lay down contradictory rules they are* *misleading.* If instructions lay down contradictory rules, so that the following of one rule will lead to a different result from following the other, the instructions are defective and misleading.

12. SAME—*when instruction as to carrier's liability is incorrect* *as applied to the case.* An instruction which states that the defendant carrier can only relieve itself from liability as an insurer by showing that the loss occurred by the act of God or the public enemy, or by reason of some failure or neglect of the shipper, or

from the inherent nature of the goods, which could not have been prevented by the exercise of ordinary care on the part of the carrier, is incorrect, where the loss occurred beyond the defendant's line and there was a restriction of liability to its own line and evidence tending to show assent thereto by the shipper.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Will county; the Hon. A. O. MARSHALL, Judge, presiding.

J. L. O'DONNELL, T. F. DONOVAN, and J. A. BRAY, (WINSTON, PAYNE, STRAWN & SHAW, of counsel,) for plaintiff in error.

KNOX & AKIN, for defendant in error.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

On June 16, 1904, the defendant in error, the Illinois Match Company, delivered to the plaintiff in error, the Chicago, Rock Island and Pacific Railway Company, a car-load of matches consigned to John T. Huner, Our Darling Siding, Queen's county, New York. The plaintiff in error delivered the car at Chicago to the Lake Shore and Michigan Southern Railway Company, which forwarded the car to New York, and in the evening of June 21, 1904, the matches were destroyed by fire while the car was standing on a storage track of the New York Central and Hudson River Railroad Company in New York City. Defendant in error sued the plaintiff in error in the circuit court of Will county for the damages occasioned by the loss of the matches and recovered a judgment of $1404.71, which was affirmed by the Appellate Court for the Second District. The record has been brought to this court by virtue of a writ of *certiorari* granted for that purpose.

The only substantial defense interposed and the only one mentioned or insisted upon in the brief and argument in this court is, that there was a special contract entered into by the parties which limited all liability of the defendant to loss occurring upon its own lines. If there was such contract the defendant was not liable for the loss, and if there was not, there was no defense to the suit.

The plaintiff was a manufacturer of matches at Joliet and shipped them to all parts of the United States. Its shipments by the defendant's railroad and another railroad at Joliet amounted to from one hundred to one hundred and fifty car-loads a year, besides other shipments of less than car-load lots. The plaintiff had sold and shipped matches to John T. Huner, and in June, 1904, he bought twenty-five car-loads from it, which were shipped as fast as they were manufactured. The plaintiff caused to be printed and kept for its own use a blank shipping order, with places for the name of the railroad company to which the car was delivered at Joliet and the name and address of the consignee, and containing directions to deliver the car in good order without unnecessary delay, "as per conditions of company's bill of lading." After the car in question was loaded, one of these shipping orders, directed to the defendant and containing the name and address of the consignee, was delivered to the defendant. The defendant then made and delivered to the plaintiff a bill of lading, signed by its agent, acknowledging the receipt of the car-load of matches, to be delivered to the next carrier to be carried to its destination, and both in that part of the bill of lading which constituted the receipt and the subsequent portion containing the agreement of the defendant there was a limitation of liability to the defendant's own lines. It contained an agreement that the defendant assumed no responsibility for the safe carriage of the matches, or for their safety, except on its own road. The secretary of the plaintiff testified that when he made out the shipping order he did not know what the

conditions of the defendant's bill of lading were; that his attention had never been called to the conditions in its bills of lading and that he never read the bill of lading for this car. The treasurer and manager of the plaintiff, who received the bill of lading, testified that he read only the written portions and had never read the other provisions and conditions and did not know until the trial what they were, and that he never talked with the defendant or any of its agents as to whether the plaintiff would be bound by the conditions in the bill of lading. The president testified that prior to the trial he never read or examined the form of the bill of lading and never knew of the terms and conditions. There was another general officer of the plaintiff, but he had nothing to do with shipping goods. The secretary was asked whether the plaintiff ever assented or agreed with the defendant that the plaintiff should be bound by the conditions contained in the bill of lading, and the court overruled an objection to the question. The ruling was wrong as it called for a mere conclusion, but the answer of the witness was that, speaking as a representative of the company, he had never, and so far as he knew no other representative of the company had ever, so consented. While the answer was somewhat in the nature of a conclusion it was a necessary one from the testimony of that witness and others and would not be ground for a reversal of the judgment.

Where two written instruments are executed as the evidence of one transaction, they will be read and considered together as one instrument in arriving at the intention of the parties. (*Gardt* v. *Brown,* 113 Ill. 475; *Crandall* v. *Sorg,* 198 id. 48; *Gould* v. *Magnolia Metal Co.* 207 id. 172; 1 Greenleaf on Evidence, sec. 283.) Under that rule the shipping order delivered by the plaintiff to defendant and the bill of lading delivered by defendant to plaintiff constituted the contract between the parties for the carriage of the matches. (4 Elliott on Railroads, sec. 1424.) That

being so, it is contended that the plaintiff was estopped by the shipping order from asserting that it did not agree to the conditions of the bill of lading. That is true as to ordinary contracts, (*Wynkoop* v. *Cowing*, 21 Ill. 570,) and the general rule was applied 'to such contracts as this in *Black* v. *Wabash, St. Louis and Pacific Railway Co.* 111 Ill. 351. But that decision was overruled in *Wabash Railroad Co.* v. *Thomas*, 222 Ill. 337, where it was held that even if the shipper signs the bill of lading containing limitations on the liability of the carrier, the burden is still on the carrier to show by evidence *aliunde* that the restrictions or limitations of the common law liability contained therein were assented to by the shipper. Of course, this does not mean that there must be a verbal contract in addition to the written one, but means that the evidence must show that the contract was understandingly entered into by the shipper and its limitations assented to. If this is the rule, it must apply where the contract consists of two instruments instead of only one, and the conclusion whether this contract was assented to by the plaintiff must depend upon other evidence than the writing.

The acceptance by the defendant of the car-load of matches marked to a place beyond the terminus of its line constituted a *prima facie* contract to carry and deliver at the place so marked, with all the liabilities and duties of a common carrier. (*Erie Railway Co.* v. *Wilcox*, 84 Ill. 239; *Chicago and Northwestern Railway Co.* v. *Simon*, 160 id. 648.) The carrier may limit its obligation to carry goods safely to its own lines although they are marked to a point beyond, and if such restriction is assented to by the shipper it will bind him. (*Erie Railway Co.* v. *Wilcox, supra.*) The statute provides that it shall not be lawful for a carrier to limit its common law liability to safely deliver property received by it at the place to which the same is to be transported, by any stipulation or limitation expressed in the receipt given for such property. The limitation contained in

that part of the bill of lading acknowledging the receipt of the property was therefore in violation of law and of no effect, but the common law liability may be limited by that part of the bill of lading which constitutes a contract if the shipper assents to the restrictions. (*Chicago and North-western Railway Co.* v. *Simon, supra.*) A bill of lading is both a written acknowledgment of the receipt of goods and also an agreement for a consideration to transport and deliver the same at the specified place to a person therein named, or his order. It has the two-fold character of a receipt and an agreement. (4 Elliott on Railroads, sec. 1415; 4 Am. & Eng. Ency. of Law,—2d ed.—510.) The common law liability cannot be restricted merely by notice of any limitation, and the carrier is bound to receive and carry goods offered for transportation, subject to all the incidents of the employment, unless some exemption from liability is given by express contract. There is no presumption that the shipper intends to abandon any of his legal rights, but if a limitation of liability is understandingly assented to by him it will bind him whether he signs any agreement or not, and whether such restrictions have been assented to in a particular case is always a matter of evidence. (*Western Transportation Co.* v. *Newhall*, 24 Ill. 466; *Merchants Despatch Transportation Co.* v. *Theilbar*, 86 id. 71; *Boscowitz* v. *Adams Express Co.* 93 id. 523.) In this case the plaintiff was constantly shipping matches in car-load lots, and otherwise, by rail from Joliet to points beyond the lines of the railroads and received bills of lading from the defendant containing the conditions and restrictions of the one in question. It was using shipping orders directing shipments "as per conditions of company's bill of lading." Its officers testified that they never read a bill of lading and did not know its contents. The facts proved by the defendant would raise a natural inference that the plaintiff, through its officers or agents, knew the conditions of bills of lading and by the shipping order intended that the matches

should be shipped on the conditions therein specified and thereby assented to the limitations therein contained. The defendant had a right to have the evidence in its favor submitted to the jury upon correct instructions as to the law. The court gave at the request of the plaintiff thirteen instructions, and with one exception they were mere abstract statements of rules relating to the duties and liability of common carriers of goods received for transportation. Instructions should be so drawn as to apply to the case to be decided by the jury, but if the instructions are not misleading it is not ground for reversal that they are mere statements of rules of law. (*Chicago City Railway Co.* v. *Anderson,* 193 Ill. 9.) These instructions, however, were misleading, both because they ignored the real matter in controversy and were incorrect as applied to the case. Instruction 5 will show the general character of the instructions, and it is as follows:

"The court instructs the jury that a common carrier is an insurer for the safe transportation and delivery of goods entrusted to it for carriage, and in case of loss or injury to such goods it can only relieve itself from liability as an insurer by showing that the loss or injury was occasioned either by an act of God or the public enemy, or by reason of some neglect or failure of the shipper, or that the loss or injury resulted from the inherent nature of the goods, which the exercise of ordinary care on its part would not have prevented."

If the jury accepted that instruction as the law, a verdict for the plaintiff was inevitable and the defense was wholly eliminated. The jury, applying the instruction to this case, would necessarily say that the defendant could only relieve itself from liability as an insurer by showing that the loss of the matches was occasioned either by an act of God or the public enemy, or by reason of the neglect of the shipper, or that the loss resulted from the inherent nature of the goods, which the exercise of ordinary

care on its part would not have prevented. Such instructions could only be justified if the defendant was not entitled to have its defense submitted to the jury at all, and could only be sustained in a case where the court ought to have directed a verdict. The court did tell the jury, as requested by the defendant, that if the plaintiff assented to the conditions of the bill of lading it could not recover unless the loss occurred while the goods were in the defendant's possession or was caused by the negligence of the defendant or its servants, but that was merely contradicting the instruction above quoted; and if instructions lay down contradictory rules, and following one rule would lead to a different result than would be arrived at by following another, the instructions are defective and misleading. *Gilmore* v. *Fuller,* 198 Ill. 130; *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* v. *Best,* 169 id. 301.

The judgments of the Appellate Court and circuit court are reversed and the cause is remanded to the circuit court.

*Reversed and remanded.*