DETERMINED IN THE

## FOURTH DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

### DURING THE YEARS 1920 AND 1921.

---

### Shapleigh Hardware Company, Appellant, v. Southern Railway Company, Appellee.

1. CARRIERS—*liability of initial carrier for burning of goods by fire set by rioters.* An initial carrier in possession of property when it is destroyed by fire which was communicated from burning buildings which had been fired by rioters will be liable therefor unless it has such a contract with the shipper as will free it from liability.

2. CARRIERS—*burden of proving limitation of liability.* In an action against an initial carrier for goods destroyed while in its possession by fire started by rioters, the burden is upon the carrier to prove by evidence *aliunde* that the shipper assented to the limitation in the bill of lading as to the destruction of property from riots.

3. CARRIERS—*instruction limiting liability as error.* In an action against an initial carrier for the loss of goods while in its possession by fire started by rioters where the defense was a clause in the bill of lading exempting the carrier from liability for goods destroyed by riot, but where there was no proof showing alternate rates or that any choice was offered the shipper, nor anything on the bill of lading showing that it was a limited liability contract, it was error to instruct the jury that, if the loss of the property was the result of a riot and the carrier was not negligent in the matter of the riot, they should find the defendant not guilty.

Shapleigh Hardware Co. v. Southern Railway Co., 222 Ill. App. 360.

4. Appeal and error—*refusal to give abstract proposition.* It is not error to refuse instructions presenting abstract propositions of law.

Boggs, J., dissenting.

Appeal from the City Court of East St. Louis; the Hon. M. Millard, Judge, presiding. Heard in this court at the October term, 1919. Reversed and remanded. Opinion filed April 10, 1920. Refiled November 13, 1920.

O. L. Voigt, for appellant; Emil A. Roebke, of counsel.

Kramer, Kramer & Campbell, for appellee; Edward P. Humphrey, of counsel. ·

Mr. Justice Eagleton delivered the opinion of the court.

The appellant, Shapleigh Hardware Company, is a Missouri corporation, engaged in business in St. Louis, and the appellee, The Southern Railway Company, is a common carrier engaged in interstate commerce.

From June 30, 1917 to July 2, 1917, inclusive, the appellant delivered to the appellee at East St. Louis, Illinois, five shipments of hardware to be transported as interstate commerce. Shortly prior to that time a traveling salesman in the employ of the appellant delivered to the appellee at Anniston, Alabama, a shipment consigned to the appellant at St. Louis, Missouri. On the shipment last mentioned a through bill of lading was issued. On the shipments made from East St. Louis no bills of lading were issued but instead receipts were given by the appellee as the shipments were delivered to it. These receipts were prepared by the appellant and each contained the following:

"This shipment is tendered and received subject to the terms and conditions of the company's uniform or standard bill of lading. * * * "

Each of these receipts was indorsed, "Received subject to terms and conditions of Southern .Ry. Co.'s

standard bill of lading," and signed by the agent.

The appellee's standard bill of lading contained the following provision: "Except in case of negligence of the carrier or party in possession, * * * the carrier or party in possession shall not be liable for loss, damage or delay occurring while the property is stopped and held in transit upon request of the shipper, owner or party entitled to make such request; or resulting from a defect or vice in the property, or from riots or strikes."

On July 2, 1917, the property included in the six consignments was held by the appellee in cars in its switch yard in East St. Louis known as the Sixth street yards. Early in the morning of that day two policemen were killed in the City of East St. Louis. The killing was supposed to have been done by negroes and a race war followed with rioting throughout that day and the night following and several negroes were killed.

During the day the police force and other peace officers being unable to preserve order, soldiers were called to assist. Agents of the appellee and various other witnesses testified that they were repeatedly advised by officers in charge that the situation was under control and they had no reason to fear the destruction of property until late in the afternoon.

About 5:30 p. m. some houses occupied by negroes and located near the place of business of the International Harvester Company were set on fire and were destroyed. Later in the evening other fires were started in various parts of the city, one of these fires being set to some houses about 7:30 p. m., which was communicated to the Sixth street switch yards of the appellee and the property above mentioned destroyed.

The Sixth street yards of the appellee are equipped with six switch tracks and on the evening in question there were about one hundred loaded cars thereon. After the fire was started that was communicated to

these switch yards, the appellee began preparations to remove, and removed some of the cars located therein. Two engines were used and from seventy to seventy-five cars were removed. Witnesses testified that more than two engines could not be used to advantage as they would be in the way of each other.

On the trial it was stipulated that the property for which damages were claimed was destroyed by fire while in cars in the Sixth street yards of the Southern Railway Company in East St. Louis, Illinois, on the evening of July 2, 1917, which were held for transportation. The evidence offered by the appellant showed the property worth $1,217.56, and no proof was offered by the appellee controverting that valuation.

The bill of lading identified by a witness for the appellant as the standard bill of lading used by the appellee contains the following provision on the reverse side thereof: "the burden to prove freedom from such negligence shall be upon the carrier, or party in possession," in addition to and as part of the clause above quoted.

It is urged by the appellant that the appellee not only failed to prove itself free from negligence but that it was shown to have been guilty of gross negligence.

The question presented is as to the liability of the appellee under these conditions. The jury found the issues in favor of the appellee. The evidence was conflicting to some extent and presented an unusual condition to the jury, and a court of review, considering all the circumstances in proof, cannot say the verdict of the jury is so clearly and manifestly against the weight of the evidence on those questions that it should interpose its judgment and set aside the verdict.

The instructions given by the court at the request of the appellee informed the jury that if the loss of the property in question was the result of a riot and that the appellee was not guilty of negligence in the matter

of the riot, the jury should find the defendant not guilty. The principal complaint directed against these instructions is that the law makes a common carrier liable for damages for injury to or loss of goods while in its possession where such injury or loss is caused by a riot. In other words, it is the claim of the appellant that the appellee was the insurer of the goods in question against the acts of persons engaged in rioting. On the other hand, the appellee takes the position that it is not liable because of the provision in its uniform bill of lading above quoted for the reason the loss was occasioned by the act of rioters, that it was not guilty of negligence, and that it is freed from common-law liability under its contract as authorized by the federal statute known as the Carmack Amendment as amended by the Cumming's Amendment.

The principal case relied on by the appellee, in support of this position, is the case of *Adam's Exp. Co. v. Croninger*, 226 U. S. 491. In that case a suit was brought against the express company to recover the full market value of a diamond ring, delivered to it at Cincinnati, Ohio, and consigned to a party at Atlanta, Georgia. The express company had issued a bill of lading in which it had limited its liability to an amount less than the full value of the property to be carried by it. In the bill of lading issued it was recited that the rate charged for carrying the property was based upon a valuation not exceeding $50. The question considered was as to the validity of the limitation on the amount of recovery and the Supreme Court of the United States held that: "It has therefore become an established rule of the common law, as declared by this court in many cases, that such a carrier may, by a fair, open, just, and reasonable agreement, limit the amount recoverable by a shipper," etc.

In the case last cited the Supreme Court, in discussing the Carmack Amendment to the Interstate Commerce Act, discussed the conditions as to interstate

shipments of freight before the passage of that act and the fact that different laws prevailed and were enforced in different jurisdictions with reference to the contracts for shipments and the liability of common carriers and said that: ''Neither uniformity of obligation nor of liability was possible until Congress should deal with the subject.''

In declaring the scope of the act in the same case, the Supreme Court held:

''That the legislation supersedes all the regulations and policies of a particular State upon the same subject results from its general character. It embraces the subject of the liability of the carrier under a bill of lading which he must issue, and limits his power to exempt himself by rule, regulation or contract. Almost every detail of the subject is covered so completely that there can be no rational doubt but that Congress intended to take possession of the subject, and supersede all State regulation with reference to it.''

In discussing the effect of the act as to the liability of the carrier in the *Croninger* case, the Supreme Court said:

''It is a liability to any holder of a bill of lading which the primary carrier is required to issue 'for any loss, damage, or injury to such property caused by it,' or by any connecting carrier to whom the goods are delivered. * * * and plainly implies a liability for some default in its common-law duty as a common carrier.''

In the case of *St. Louis, I. M. & S. R. Co. v. Starbird*, 243 U. S. 592, is a review by the United States Supreme Court of a number of its opinions and this conclusion given:

''Since the passage of the Carmack Amendment, the State court must be held to have known that interstate shipments were covered by a Uniform Federal rule which required the issuance of a bill of lading, and that that bill of lading contained the entire contract upon which the responsibilities of the parties rested.''

Under the foregoing authorities, counsel for appellee insist that the entire liability of a carrier under an interstate shipment is determined by the bill of lading and that no common-law liability exists.

Another case cited by both parties is *Cincinnati, N. O. & T. P. R. Co. v. Rankin*, 241 U. S. 319. In that case a wreck occurred. It was urged that the carrier was not liable because it was not guilty of negligence. It was conceded by its counsel that under the common-law rule it would be liable not only for negligence but as an insurer and that unless the Carmack Amendment had changed the rule it was responsible for damages not exceeding specified values. In discussing the decision in the *Croninger* case the Supreme Court said:

"Properly understood, neither this nor any other of our opinions holds that this amendment has changed the common-law doctrine theretofore approved by us in respect of a carrier's liability for loss occurring on its own line."

In the case of *Shellabarger Elevator Co. v. Illinois Cent. R. Co.*, 278 Ill. 333, a grain company shipped several cars of grain, two of which were billed from Argenta to New York. Bills of lading were issued for these two cars with this notation therein: "Stop at Chgo. for inspection & wts." On arrival of these cars at Chicago they were stopped and unloaded and there was a deficiency in the grain in each car from the amount delivered to the railroad company. The grain company sold the grain according to the weights at Chicago and turned the bills of lading to the purchasers which were surrendered to the railroad company and canceled. It was urged that the grain company could not maintain an action for the reason it was not the holder of the bills of lading. The Supreme Court held:

"Whatever cause of action there is must be in the appellee. This cause of action is not on the bill of lading, but on the failure of the appellant to perform its duty to safely carry and deliver the grain. It is

not under the Carmack Amendment, which refers only to bills of lading. The provisions of the Carmack Amendment do not interfere with the right of appellee to recover.''

In that case the Supreme Court held a clause indorsed on a bill of lading whereby the carrier attempted to free itself for liability for difference in weights of grain to be against public policy and void. The clause in the instant case is not against public policy but presents a different question.

In the *Rankin* case the Supreme Court of the United States held: ''The essential choice of rates must be made to appear before a carrier can successfully claim the benefit of such limitation and relief from full liability. * * * But where a bill of lading, signed by both parties, recites that lawful alternate rates based on specified values were offered, such recitals constitute admissions by the shipper and sufficient prima facie evidence of choice. If, in such case, the shipper wishes to contradict his own admissions, the burden of proof is upon him.'' In that case the court further said: ''The bill of lading in question is plainly entitled, 'Contract for Limited Liability in the Transportation of Live Stock at Reduced Rates' and contains the conspicuous provisions concerning published rates, tariff regulations, choice offered the shipper and limit on the carrier's liability, etc.''

There is no proof in this case showing alternate rates or that any choice was offered the shipper nor is there anything on the bill of lading showing that it is a limited liability contract.

The rule as to the liability of a common carrier to answer in damages for property destroyed while in its possession is stated in Corpus Juris, vol. 10, sec. 129, as follows:

''The general rule as to common carriers' liability with reference to the goods in his possession as carrier, and regardless to any contractual exceptions, is that he is liable for all loss or destruction of or injury

to such goods, not occasioned by the act of God or the public enemy. This exceptional liability, in addition to that of an ordinary bailee, for hire, is imposed by public policy."

In the case of the *Illinois Match Co. v. Chicago, R. I. & P. Ry. Co.,* 250 Ill. 396, as in this case, the plaintiff, who was the shipper, prepared for its own use a blank shipping order directing the carrier to deliver the goods without unnecessary delay, "as per conditions of company's bill of lading." The defendant company's bill of lading contained a clause that it assumed no responsibility for the safe carriage of the matches or for their safety except on its own road. It was held:

"Where two written instruments are executed as the evidence of one transaction, they will be read and considered together as one instrument in arriving at the intention of the parties. * * * Under that rule the shipping order delivered by the plaintiff to defendant and the bill of lading delivered by the defendant to plaintiff constituted the contract between the parties." And it was there held that under those circumstances, "the burden is still on the carrier to show by evidence *aliunde* that the restrictions or limitations of the common-law liability contained therein were assented to by the shipper."

From the foregoing the conclusion is reached that the appellee being the initial carrier, and being in possession of the property in question at the time it was destroyed, would be liable therefor unless it had such a contract with the appellant as freed it from such liability, and that the burden was on the appellee to prove by evidence *aliunde* that the appellant assented to the limitation in the bill of lading as to the destruction of the property from riots.

From this holding it follows that the trial court erred in giving each of the instructions given on behalf of the appellee.

The instructions offered by the appellant each pre-

sented an abstract proposition of law and the trial court did not err in refusing to give them.

For the reasons indicated the judgment of the trial court is reversed and the cause remanded for a new trial.

*Reversed and remanded.*

A rehearing having been granted in this cause, and the briefs and arguments filed with said motion and the original record in said cause, and the briefs and arguments filed therewith having been duly considered on said rehearing, and the court having reached the same conclusion heretofore announced, the opinion then filed will be adhered to.

BOGGS, J., dissenting.