### ROBERT BLACK

*v.*

THE WABASH, ST. LOUIS AND PACIFIC RAILWAY COMPANY.

*Filed at Springfield September 27, 1884.*

1.   CARRIER—*reasonableness of special contract limiting liability.*   A stipulation in a shipping contract, voluntarily and understandingly entered into by a shipper of live stock for transportation, that in consideration of a reduced rate no claim for damages accruing to the shipper shall be allowed or paid by the carrier, or sued for in any court, unless a claim for such loss or damage shall be made in writing, verified by the affidavit of the shipper or his agent, and delivered to the general freight agent of the carrier, at his office, within five days from the time such stock is removed from the cars, will be binding upon the shipper, and is not void as being contrary to any law or to public policy.

2.   CONTRACT—*executed in ignorance of its terms—when it is binding.* Where a party of mature years and sound mind, being able to read and write, without any imposition or artifice to throw him off his guard, deliberately signs a written agreement without informing himself of the nature of its contents, he will nevertheless be bound by it, for the reason the law will not permit him to allege, as a matter of defence, his ignorance of that which it was his duty to know, particularly when the means of information are within his immediate reach, and he neglects to avail himself of them.

3.   In an action by the shipper of stock against a railway company to recover damages for negligence and delay in transportation, and a special written or printed contract is set up to defeat the action for a non-compliance with its terms and conditions, the shipper will have the right to show the circumstances under which he executed the same, when he claims he was purposely misled by the defendant's agent and induced to sign the same without having time to examine the contents, under the fraudulent assurance that it was only a pass.

4.   EVIDENCE—*latitude on cross-examination.*   In a suit against a railway company as a carrier, to recover damages for a loss from negligence and delay in the transportation of freight, a special contract of shipment was set up in bar, which was executed in consideration of reduced rates, as was claimed by the defendant, and which the plaintiff claimed was signed by him under the fraudulent assurance it was only a pass, just as the train was starting to leave, when he had no time to read the same.   The defendant's station agent was permitted to testify that $33.50 was the schedule rate per car for the shipment of stock.   On cross-examination the plaintiff asked him if the company had ever received that amount for a car of freight between the same

points, and also this question: "Did you tell him (plaintiff) when he came for the cars at \$25, he would have to sign any contract relieving the company from liability?"—to which the court sustained objections: *Held*, that under the latitude of cross-examination both questions were clearly proper, and that the court erred in ruling otherwise.

5. SAME—*res gestœ.* On the question whether a shipper's contract was fairly and understandingly executed by the shipper, or whether he was induced to sign the same without examination, under the false assurance of a station agent that it was only a pass, the agent, on his examination in chief, stated certain of his declarations to the shipper, made at the time and relating to the signing of the alleged contract. On cross-examination an objection was sustained to this question: "Did you tell Black (the shipper) what it was when you had him sign it?" *Held,* that the court erred in its ruling, and that everything that was said or done at the time by either of the parties relating to the signing, was a part of the *res gestœ,* and was proper to be elicited on cross-examination.

6. SAME—*of the party's right to have the whole of a conversation.* Where a party proves, by its agent, the declaration of the latter made at the time of the signing of a contract, the validity of which was being questioned, it is clearly the right of the other party, on cross-examination, to call out all that was said at the same time on the same subject.

7. SAME—*in rebuttal.* Where a special written contract is set up in defence, the execution of which is claimed to have been fraudulently obtained, and the defendant proves by his agent what was said and done at the time it was signed, it is error to refuse to allow the plaintiff, in rebuttal, to give his version of the same matters.

8. SAME—*on question whether a special contract was made for shipment.* Where it was a question whether a special contract for the transportation of live stock was fairly and understandingly signed, or procured fraudulently, the shipper was asked, "What, if anything, was said about that being a special contract with you at that time?" and also, "Was this paper introduced in evidence, in the contract you made to ship the stock by the railroad company to Chicago?"—to both of which questions the court sustained objections: *Held,* that the court erred in excluding the questions.

9. SAME—*parol evidence as to manner of execution of contract.* Parol evidence is admissible to impeach the validity of a written instrument. Such evidence is not proper to change the terms of a written agreement, but the circumstances under which its execution is procured may be shown, for the purpose of showing whether the paper ever became a contract, or not. That a contract exists must be shown by parol, and the proof of such existence may be attacked by proof that the execution of the document is a nullity, as having been procured by duress, or by fraud, etc.

10. Where a plaintiff contended that a verbal understanding between him and a railroad station agent was the contract, and the only one, under which

he made a shipment, and that an instrument signed by him and the agent was executed on his part under the belief that it was a mere pass over the road, and that belief was induced by the conduct and misrepresentation of the agent, while the defendant insisted that the instrument was a valid and binding agreement, affording the only evidence of the contract between it and the plaintiff, it was *held,* that it was a matter of proof which theory was correct, and that the only way of establishing the truth or falsity of either hypothesis was by showing what passed between the parties.

APPEAL from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of DeWitt county; the Hon. GEORGE W. HERDMAN, Judge, presiding.

Messrs. MOORE & WARNER, for the appellant:

A common carrier can only make such contracts exempting itself from responsibility as are reasonable in the eye of the law; and the reasonableness of each contract must depend upon the circumstances of the case in which it is to be construed. Lawson on Contracts of Carriers, sec. 29; *Rice* v. *Railway Co.* 63 Mo. 314; *Transportation Co.* v. *Cornforth,* 3 Col. 280; *Railroad Co.* v. *Lockwood,* 17 Wall. 357.

The exemption clause in the contract is unreasonable, and does not bar the action. *Rice* v. *Railway Co.* 63 Mo. 314; *Oxley* v. *Railway Co.* 65 id. 629.

Appellee having received actual notice within a reasonable time, and promised to investigate the claim, is estopped from insisting on want of form or limitation of time. *Rice* v. *Railway Co.* 63 Mo. 310; *Oxley* v. *Railway Co.* 65 id. 634; *Noyes* v. *Insurance Co.* 4 Zabr. 447; *Clark* v. *Insurance Co.* 6 Cush. 342; *Peacock* v. *Insurance Co.* 1 Bosw. 338; *Bartlett* v. *Insurance Co.* 46 Maine, 500; *Risinger* v. *Cheney,* 2 Gilm. 84.

A common carrier can not, by special contract or otherwise, limit its common law liability for loss or damage occasioned by the negligence of itself or its agents or employes. 1 Addison on Torts, (Wood's ed.) 716-731; 2 Wait's Actions and Defences, 44-46; Wharton on Negligence, sec. 589; Cooley on Torts, 640, 684, 685; Lawson on Contracts of

Carriers, chap. 2, p. 24; *Railroad Co.* v. *Lockwood,* 17 Wall. 357; *Bank of Kentucky* v. *Express Co.* 3 Otto, 174; *Railroad Co.* v. *Waters,* 41 Ill. 73; *Oppenheimer* v. *Express Co.* 69 id. 62; *Railroad Co.* v. *Wilcox,* 84 id. 239; *Boskowitz* v. *Express Co.* 93 id. 523; *Express Co.* v. *Kountz,* 8 Wall. 342; *York County* v. *Railroad Co.* 3 id. 107; *Kuter* v. *Railroad Co.* 1 Biss. 35; *Manufacturing Co.* v. *Railroad Co.* id. 377; *Fuller* v. *Talbot,* 23 Ill. 357; *Transportation Co.* v. *Newhall,* 24 id. 466; *Railroad Co.* v. *Montgomery,* 39 id. 335; *Railroad Co.* v. *Owens,* 53 id. 391; *Railroad Co.* v. *McClellan,* 54 id. 58; *Railroad Co.* v. *Shea,* 66 id. 471; *Railroad Co.* v. *Sawyer,* 69 id. 285; *Railroad Co.* v. *Thompson,* 71 id. 434; *Transportation Co.* v. *Kahn,* 76 id. 520; *Railroad Co.* v. *Hamilton,* id. 393; *Railroad Co.* v. *Curtis,* 80 id. 324.

The trial court erred in refusing to let appellant prove that this pretended contract was unfairly, if not fraudulently, obtained; that it was not the contract on which the shipment was made; in holding that the appellee would not ·be liable for "actual" negligence; in modifying some of appellant's instructions and refusing others, and in giving for appellee the instructions it did; and the Appellate Court erred in affirming the judgment of the trial court.

Messrs. BROWN & KIRBY, for the appellee:

The clause of the contract by which appellant agreed to give notice of any loss he might sustain, is reasonable and valid. *Railroad Co.* v. *Munson,* 19 Ill. 136; *Railway Co.* v. *Wilcox,* 84 id. 239; *Despatch Co.* v. *Bolles,* 80 id. 473; *Arnold* v. *Railroad Co.* 83 id. 273; Hutchinson on Carriers, sec. 218; *Railroad Co.* v. *Black,* 11 Bradw. 65; *Express Co.* v. *Caldwell,* 21 Wall. 264; *Lee* v. *Railroad Co.* 5 H. & N. 867; Wharton on Negligence, sec. 587; *Lewis* v. *Railroad Co.* 5 H. & N. 867; *Rice* v. *Railway Co.* 63 Mo. 314; *Oxley* v. *Railway Co.* 65 id. 629; *Wolf* v. *Telegraph Co.* 62 Pa. St. 83; *Young* v. *Telegraph Co.* 34 N. Y. 390; *York County* v.

*Railway Co.* 3 Wall. 107; *Goggin* v. *Railway Co.* 12 Kan. 416; *Bankord* v. *Railroad Co.* 34 Md. 197; *Insurance Co.* v. *Scammon,* 100 Ill. 644.

Appellant can not avoid the contract because he failed to read it. *Railroad Co.* v. *Hale,* 2 Bradw. 160; *Grace* v. *Adams,* 100 Mass. 505.

The letters from the general freight agent do not show a waiver of the right to have proper notice of the claim. *Lintner* v. *Millikin,* 47 Ill. 178; *White* v. *Murtland,* 71 id. 250; *Ogden* v. *Kirby,* 79 id. 555; *Jordan* v. *Easter,* 2 Bradw. 73.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

This was an action on the case, brought by the appellant, Robert Black, to the June term, 1882, of the De Witt circuit court, against the Wabash, St. Louis and Pacific Railway Company, the appellee, to recover damages for alleged negligence in the carriage and transportation of a lot of beef cattle, belonging to the appellant, from Midland City, in said De Witt county, to the Union Stock Yards, in Cook county, resulting, as is claimed, in the loss of several head of the cattle, and serious injury to the others. The cause was tried before the court and a jury, resulting in a verdict and judgment for the defendant. On appeal to the Appellate Court for the Third District the judgment of the circuit court was affirmed, and the case is now before us for review.

The errors assigned upon the record, and relied on for a reversal, question the rulings of the trial court in the admission and exclusion of testimony, and in the giving, refusing and modifying of instructions. In order to a proper understanding of the questions thus raised, it will be necessary to advert, in a general way, to the leading facts in the case, as well as to the opposing theories, upon which the case was tried.

The appellant, being a farmer and shipper of stock, in the latter part of June, 1881, called on Cicero Lane, the station

agent of appellee at Midland City, for the purpose of making arrangements for shipping a lot of cattle and hogs from that place to Chicago, over appellee's road. The agent informed him that at present rates the cars would cost him $33.50 per car, (or, as appellant states it, $30 per car,) but at the same time promised him he would try to get him better rates. Accordingly, on the first of July, or thereabouts, the agent informed him the company had made a lower rate, and that he could then ship his stock at $25 per car. In pursuance of this understanding, the appellant, on the 6th day of the following month, loaded his stock, consisting of ninety-four head of cattle and fifty-five head of hogs, in cars furnished by appellee, then standing on its tracks at Midland City. After the stock was loaded, and a short time before the train moved off, Lane, the station agent, came to appellant and told him he had better go to the office and sign his passes, which he did. The passes referred to were, in fact, a written agreement, in duplicate, between the company and appellant, containing the terms and conditions upon which the stock then in the cars was to be shipped, the same having already been signed by Lane on behalf of the company. Appellant testifies this agreement was signed by him in duplicate, on presentation by the agent, without any knowledge of the real character of its contents, and the evidence shows one copy of it was retained by appellant and the other forwarded by Lane to the general freight agent of the company at St. Louis. As appellant claims, on the arrival of the train at Chicago, and before he had an opportunity of examining the contract, an agent of the company came round and took it up, and has since had exclusive possession of it.

The ultimate question upon which this case hinges is, whether appellant, under the circumstances, is concluded by the provisions of the contract in question. The appellant, in presenting the case to the trial court, simply showed the time and place of the shipment of the stock, and the price

to be paid for the cars used for that purpose, without developing the existence of the special contract. He then offered testimony tending to show the loss and injury to the cattle were occasioned by the negligence and delay of the company in their transportation, and thereupon rested. To meet the case thus made by appellant, appellee offered testimony tending to negative the charge of negligence on the part of the company, and also put in evidence the special contract above mentioned, which contains, among others, the following stipulation :

"*Tenth*—In consideration of the rate aforesaid, it is further agreed that no claim for damages which may accrue to the party of the second part under this contract, shall be allowed or paid by the party of the first part, or sued for in any court by the party of the second part, unless a claim for such loss or damage shall be made in writing, verified by the affidavit of the party of the second part, or his or their agent, and delivered to the general freight agent of the party of the first part, at his office in the city of St. Louis, within five (5) days from the time said stock is removed from said cars."

It is conceded appellant failed to give notice to appellee's general freight agent at the city of St. Louis, of the loss and damage to the stock, within the time or in the manner required by the above stipulation. It is claimed, however, by appellant, first, that the stipulation in question is an unreasonable attempt on the part of the company to limit its common law liability, not warranted by public policy, and that for that reason it is inoperative and void ; and second, that admitting it to be *prima facie* valid, it is nevertheless, by reason of the circumstances under which it was obtained, not binding upon the appellant.

With respect to the first branch of the proposition we have no hesitancy in holding that a stipulation like this, when voluntarily and understandingly entered into by the shipper, is binding upon him. The manifest object of such a provision is

to force those claiming to be damaged by the carrier's negligence, to promptly present their claims for adjustment while the facts and circumstances upon which they are based are fresh in the memories of parties and witnesses, and to prevent being harassed or imposed upon by dishonest claimants. We see nothing improper in requiring such claims to be verified by affidavit.

The second branch of the proposition is not so free from difficulty. A contract, *ex vi termini*, implies the assent of two or more minds to the same proposition. It follows, therefore, if one sign a written instrument containing mutual stipulations between himself and another, without any knowledge of its contents, there will not be in fact, in the strict sense of the term, a contract between them, though in a legal sense there may be. Where a party of mature years and sound mind, being able to read and write, without any imposition or artifice to throw him off his guard, deliberately signs a written agreement without informing himself as to the nature of its contents, he will nevertheless be bound, for in such case the law will not permit him to allege, as matter of defence, his ignorance of that which it was his duty to know; particularly where the means of information are within his immediate reach, and he neglects to avail himself of them. Applying this elementary principle to the case in hand, it was clearly the duty of appellant to have examined the contract in question, and fully advised himself as to its contents, before signing it; and if, by a failure to perform this duty, he has sustained an injury, he must suffer the consequences, unless such failure was occasioned by the fraud or artifice of appellee,—and this, we understand, appellant claims was the case.

Whether appellant was purposely misled and thrown off his guard by appellee, and thereby induced to sign the contract in question, upon the hypothesis it was a mere pass over appellee's road, as is claimed was the case by appellant's counsel, is a question which the trial court seems to

have ignored and studiously kept from the consideration of the jury. This is clearly shown, both from the instructions of the court and its exclusion of testimony bearing upon the question. Indeed, the rulings of the trial court seem to have been highly technical, and altogether unfavorable to the appellant. Even upon cross-examination, where great latitude is generally allowed, the reins appear to have been very tightly drawn, as is shown by the following rulings: The station agent having been permitted to state, against the objection of appellant, that $33.50 was the schedule rate per car for the shipment of stock from Midland City to Chicago, at the date of this transaction, was asked, on cross-examination, if the company had ever received that amount for a car of freight from Midland City to Chicago, and, on objection, the question, strange to say, was ruled improper. The following cross-question propounded to this witness was also ruled improper: "Did you tell him (appellant) when he came for them (the cars) at $25, he would have to sign any contract releasing the company from liability?" Both the above questions, under the latitude of cross-examination, were clearly proper, and the court erred in ruling otherwise. The erroneous ruling of the court, however, so far as the last two questions are concerned, is cured by the answers of the witness, for notwithstanding they were ruled improper, the witness proceeded to and did fully answer them, so that the appellant was not at all prejudiced by the ruling.

With respect to the signing of the contract, the station agent testified as follows: "I don't know whether the cattle were all loaded or not when the contract was signed. I don't remember when the train started. I went up to the pens and told him to sign the contract, and that would pass him. I can't say positive whether I told him to come down and sign his passes. I don't remember that I called it a contract when I asked him to sign it. When Black came down to sign it, the cars were loaded, as well as I recollect." Having made

this statement, the witness was then asked, on cross-examination, the following question: "Did you tell Black what it was when you had him sign it?"—which, on objection, was held by the court improper, and the plaintiff excepted. As the witness had stated, on his examination in chief, certain declarations of his own, made at the time, and relating to the signing of the alleged contract, it was clearly the right of appellant, on cross-examination, to call out all that was said at the same time on the same subject. Under the circumstances of this case, everything that was said or done at the time by either of the parties, relating to the signing of the contract, was a part of the *res gestæ,* and was proper to be called out on cross-examination, and it was therefore clearly error to disallow the question.

The appellant having been called as a witness, in rebuttal, to give his version of what occurred before and at the time of signing the contract in question, was asked the following questions, namely: "What, if anything, was said about that being a special contract with you at that time?" "Was this paper (introduced in evidence) the contract you made to ship the stock by the Wabash Railroad Company to Chicago?"— both of which questions the court held improper, and refused to allow them to be answered. Upon what principle the court permitted the agent of appellee to testify as to all the matters here inquired after, and yet absolutely closed the mouth of appellant on the same subject, is difficult to conceive. For instance, when Lane was on the stand, counsel for appellee, referring to the written contract relied on as a defence in the case, asked the witness this question: "Was this the contract on which the cattle were shipped?" and the court, on objection being made, held the question, as it should have done, proper; yet when appellant is asked substantially the same question, he was not, as we have just seen, permitted to answer it. We are aware of no rule of law that permits such a diversity of ruling in the same case.

It may be, the court, in so studiously and vigilantly suppressing and keeping from the jury all that was attempted to be shown by appellant as to what was said or passed between the parties either before or at the time of signing the agreement, supposed it was merely applying the general principle that parol evidence is not admissible for the purpose of changing the terms of a written instrument; but if so, the court was clearly laboring under a misapprehension. The object of the excluded evidence was not to change the terms of an agreement which was admitted to have a valid existence, but rather to show that by reason of the circumstances under which it was obtained, it was, in legal effect, no agreement at all. It is just as well settled by the authorities that parol evidence is admissible to impeach the validity of an instrument, as it is that such evidence will not be heard merely for the purpose of changing or varying its terms. (Abbott on Trial Evidence, 294; Kerr on Fraud and Mistake, 388.) It is well said by Wharton, in his work on Evidence, section 931 : "Before the rules excluding parol testimony to vary documents can be applied, we must determine a document legally exists. That it exists must be shown by parol, and the proof of such existence may be attacked by proof that the execution of the document was a nullity, having been coerced by duress, or elicited by fraud," etc. The well recognized doctrine, here so clearly and forcibly announced, was especially applicable to this case. There were, as is generally the case, two distinct and opposing theories upon which it was being tried. The plaintiff was proceeding upon the hypothesis that the verbal understanding reached between appellant and the station agent, about the first of July, when the latter informed him that he could furnish him the cars at $25 a car, was the contract, and only contract, under which the shipment was made; that the instrument signed by himself and the agent was executed on his part under the belief that it was a mere pass over appellee's road, and that

this belief was induced by the conduct and misrepresentation of the agent of appellee. The case, on the other hand, was tried upon the theory that the instrument in question is a valid and binding agreement, and as such affords the only evidence of the contract between them for the transportation and carriage of the cattle,—that all prior and cotemporaneous declarations and statements of the parties were merged in the written agreement. Now, whether the one or the other of these theories was true, was clearly a matter of proof, and the only way of establishing the truth or falsity of either hypothesis was by showing just what passed between the parties. This the court refused to permit, and we think it was error, for which the case should be reversed.

The judgment of the Appellate Court is reversed, and the cause remanded, with directions to that court to reverse the judgment of the circuit court, and remand the cause for further proceedings in conformity with this opinion.

*Judgment reversed.*

Mr. JUSTICE WALKER, dissenting in part:

I am unable to concur in that part of the opinion which holds that the company may contract to relieve itself from liability within less than the statutory period for a bar. It is, in my judgment, opposed to public policy to permit a railroad company to impose in its shipping contract a condition that a shipper suffering loss shall prepare, swear to and serve a notice of the loss on an agent of the company in a distant city in another State. It virtually places the shipper at the mercy of the company. It may fix the charges when stock is shipped without such a contract, at an oppressive rate, and stock shipped under such a contract, at a fair and reasonable rate, and give the shipper his choice. If the rate charged when there is no such contract, is double or treble that when made under such a contract, then the shipper is virtually compelled to enter into such a contract. By such

means these bodies have the power to compel all shippers to submit to such and almost any terms they may impose. Power to make such contracts, if sanctioned, is liable to great abuse, and, in many cases, to oppression and injustice. The legislature has, in its wisdom, and in promotion of the general welfare, prescribed the period of limitation of the various actions, and I hold that parties are not capable of contracting to shorten the period, or to impose hard and unreasonable terms, before the party suffering loss can avail of the provisions of the statute. I therefore dissent to that portion of the opinion in this case.

Mr. Justice Scott, also dissenting.