## THE WABASH RAILROAD COMPANY

*v.*

## F. E. THOMAS.

*Opinion filed April 17, 1906—Rehearing denied October 10, 1906.*

1. CARRIERS—*carrier accepting a shipment marked to a certain place impliedly agrees to deliver it there.* A carrier by accepting a car-load of live stock marked to a particular destination impliedly agrees to deliver it at that place and is *prima facie* bound to do so.

2. SAME—*whether shipper assented to limitation of carrier's liability is a question of fact.* Whether the terms of a special agreement limiting the liability of a common carrier were understood and entered into by the shipper and assented to by him is a question of fact, and parol evidence is admissible for the purpose of showing whether the written agreement was assented to by both parties.

3. SAME—*burden is on carrier to show that shipper assented to contract.* Where a contract limiting the liability of a carrier is contained in a bill of lading constituting both a receipt and a contract, the burden is upon the carrier to show that the shipper assented to the terms and conditions of the contract.

CARTWRIGHT, J., and SCOTT, C. J., dissenting.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Vermilion county; the Hon. JAMES W. CRAIG, Judge, presiding.

C. N. TRAVOUS, for appellant:

To transport the horses in question from Council Bluffs, Iowa, to Paris, Illinois, required the services of three distinct carriers. As appellant's line extended only to St. Louis, Mo., the law imposed upon it no obligation to carry the horses beyond this point. The burden was upon appellee to show an agreement on the part of appellant to transport the horses beyond St. Louis, and in the absence of such showing appel-. lant's obligations were fully discharged when it delivered the horses in good condition to its connecting carrier at St. Louis. *People* v. *Railroad Co.* 55 Ill. 95; *Railway Co.* v. *Wilcox*, 84 id. 239; *Myrick* v. *Railroad Co.* 107 U. S. 102.

The live stock contract, including the application for the shipment of the horses, both of which were signed by appellee, expressly states that the undertaking on the part of appellant was only to carry the horses "from Council Bluffs, Iowa, to St. Louis, Mo.," so that appellant's contract was fully performed upon delivery of the horses to the connecting line. *Hewitt* v. *Railway Co.* 63 Iowa, 611; *Helliwell* v. *Railway Co.* 7 Fed. Rep. 68; *Myrick* v. *Railroad Co.* 107 U. S. 102.

The contract in question having been executed in the State of Iowa, its effect and construction are to be determined by the law of that State, which, in the absence of proof to the contrary, is in accordance with the rules of the common law. Hutchinson on Carriers, sec. 140, *et seq.; Pennsylvania Co.* v. *Fairchild*, 69 Ill. 260; *Transportation Co.* v. *Furthman*, 149 id. 66.

The live stock contract having been executed by both parties prior to the delivery of the horses to appellant, parol evidence was not admissible to contradict or vary its terms, and the admission of appellee's statements to appellant's agent before the shipping contract was executed, and of his conversations with trainmen and other persons while the horses were in transit and after their delivery to the connecting line, was error. *Hewitt* v. *Railway Co.* 63 Iowa, 611;

Porter on Bills of Lading, secs. 64, 65; *Railroad Co.* v. *Wilson*, 119 Ind. 352; *Long* v. *Railroad Co.* 50 N. Y. 76; *Snow* v. *Railway Co.* 109 Ind. 422; 2 Am. & Eng. Ency. of Law, (2d ed.) 536, 568; *Railway Co.* v. *Bank*, 178 Ill. 506.

It was appellee's duty to acquaint himself with the contents of the shipping contract signed by him, and there being no fraud or deception, he is chargeable with knowledge of its contents, notwithstanding his failure to read it. His signature to the contract raises a conclusive presumption of knowledge of its terms and conditions and of assent thereto. 7 Am. & Eng. Ency. of Law, 112; 4 id. 515, 536; *O'Bryan* v. *Kinney*, 74 Mo. 125; *Railway Co.* v. *Black*, 111 Ill. 351.

Since the live stock contract expressly limited appellant's responsibility to loss or damage occurring "on its own line," and the horses were delivered safely and in good condition to its connecting carrier, there would be no liability even if it had contracted for their transportation to Paris, Illinois. Hutchinson on Carriers, sec. 149, *et seq.; Jones* v. *Railway Co.* 89 Ala. 376; *Myrick* v. *Railroad Co.* 107 U. S. 102; *Coles & Co.* v. *Railway Co.* 41 Ill. App. 607; *Railroad Co.* v. *Simon*, 160 id. 648; *Cau* v. *Railway Co.* 194 U. S. 427.

W. H. CLINTON, H. S. TANNER, and PENWELL & LINDLEY, (WALTER C. LINDLEY, of counsel,) for appellee:

A common carrier is an insurer for the safe delivery of live stock, and as such is answerable, in the absence of a special contract to the contrary, for every loss that cannot be attributed to God, public enemies or to the vices of the animals themselves. *Railway Co.* v. *Hamilton*, 76 Ill. 393; *Burke* v. *Express Co.* 87 Ill. App. 505.

Carriers seeking to avoid this common law liability by means of a special contract have the burden of showing that the restrictions on the common law liability contained in a bill of lading or alleged shipping contract were assented to by the consignor. *Boscowitz* v. *Express Co.* 93 Ill. 523; *Railway Co.* v. *Stock Farm*, 194 id. 9; *Field* v. *Railroad Co.*

71 id. 462; *Webbe* v. *Telegraph Co.* 169 id. 618; *Railway Co.* v. *Patton,* 103 Ill. App. 550; 203 Ill. 376.

This is true even though the bill of lading or alleged contract was signed by the consignor. *Railway Co.* v. *Patton,* 104 Ill. App. 350; 203 Ill. 376; *Railway Co.* v. *Stock Farm,* 96 Ill. App. 337; 194 Ill. 9; *Railroad Co.* v. *Fox,* 113 Ill. App. 180.

Whether the plaintiff in the present case had knowledge of and assented to the provisions of the so-called shipping contract was a question for the jury, and its finding and that of the Appellate Court conclusively settle that point. *Railway Co.* v. *Patton,* 104 Ill. App. 354; 203 Ill. 376; *Railway Co.* v. *Stock Farm,* 194 id. 13; *Railroad Co.* v. *Davis,* 159 id. 53; *Transportation Co.* v. *Dater,* 91 id. 195; *Railway Co.* v. *Simon,* 160 id. 653.

Mr. JUSTICE WILKIN delivered the opinion of the court:

This is an appeal from a judgment of the Appellate Court for the Third District affirming a judgment of the circuit court of Vermilion county in favor of the appellee, against the appellant, for $2400 and costs of suit.

The declaration consisted of two counts substantially alike, charging the defendant, as a common carrier, with a breach of duty in failing to safely carry twenty-five head of horses from Council Bluffs, Iowa, to Paris, this State; negligently failing to properly feed and water the animals while *en route;* carrying them by slow trains, and suffering the cars in which they were loaded to stand on the track for an unreasonable length of time, all of which resulted in their becoming reduced in flesh, diseased and lessened in value, and in consequence of which neglect twelve of them died. A plea of not guilty was filed by the defendant, and upon the trial by jury a verdict was returned and judgment rendered in favor of the plaintiff.

It appears from the evidence that at the date of the shipment appellee resided in Paris, Illinois, though for sixteen

years immediately preceding that time he had been in western Nebraska, where he was engaged in raising and shipping stock. The horses in question were first shipped from Nebraska to Council Bluffs over the Union Pacific railway, arriving at Council Bluffs about nine o'clock Saturday evening. They were unloaded, fed and watered, and the next morning appellee called on the Wabash agent at that place to arrange for shipment over the appellant's line. He testified that he told the agent that he wanted the stock sent to the stock yards at St. Louis and there fed before being sent to Paris. The agent prepared an application and contract of shipment, the former of which purports to have been signed by the plaintiff, and the latter by the agent, on behalf of the company, and by the plaintiff. The contract was for shipment from Council Bluffs to St. Louis, and stated that the carrier had agreed to forward the car of horses from Council Bluffs to St. Louis; that its responsibility extended only to its own line, and that appellee had agreed to care for the horses while in transit, load and unload and feed and water them at his own risk and expense, and that in case of loss or damage he would make and present his claim in writing, verified by affidavit, within ten days after the horses were unloaded, or be barred from recovering anything on account of the same. The horses were loaded into a Street's Western Stable car about twelve o'clock Sunday night and delivered to the company about 2:45 Monday morning, July 27, leaving for St. Louis about fifteen minutes later. They arrived at the yards in North St. Louis at 6:12 o'clock the following morning, and the car in which they were being shipped was immediately delivered to the Terminal Association of St. Louis, which, in turn, delivered it to the Cleveland, Cincinnati, Chicago and St. Louis Railway Company at East St. Louis for transportation to Paris. Plaintiff offered evidence to the effect that he told the conductor in charge of the train to St. Louis that he wanted the horses unloaded, fed and watered at the stock yards in St. Louis, and was assured that

it would be done. This was denied by the conductor. Appellee claims that after thus being assured that the horses would be unloaded at the stock yards he left the train at St. Louis to get his breakfast and then went to the stock yards to see about his horses, but could not find them, and spent the day searching for them, until about eleven o'clock at night, when he learned that they had been forwarded to Paris. The car stood all day in the yards at St. Louis, and the horses were neither fed nor watered until after they arrived at Paris. They left St. Louis some time during the night, arrived at Paris the next day, and were unloaded. They had been *en route* about fifty-two hours, and when unloaded went immediately to a pool of stagnant water and began to drink, but were driven into another pen. Their manes and tails were partly eaten off and they were very weak and gaunt. They were removed to a farm not far distant where they were attended by a veterinary surgeon, but twelve of them died as a result of their treatment and eight were sold two months later for $375.

On the back of the contract of shipment was the following:

"July 26, 1903.—Shipper, F. E. Thomas, Kimball, Nebraska; consignee, F. E. Thomas, Paris, Illinois; No. of cars, 3455 S. W. S. —Pass F. E. Thomas, parties in charge and accompanying stock.
F. S. BLANCHARD, *Agent.*"

The car in which the animals were shipped was marked Paris, Illinois. The night operator of the company at Luther, North St. Louis, testified: "July 28, 1903, train 96 [in which the horses were shipped] arrived at North St. Louis 6:12 o'clock in the morning. There was a car of horses in the train for Paris, Illinois, care of the Big Four. The consist showed this. I reported this car-load of stock to the Merchants' Bridge connection," etc.

Appellant's line east from Council Bluffs, Iowa, terminated at St. Louis, and it is insisted by its counsel that the burthen of proof was upon the shipper to show a special

agreement on its part to transport the horses beyond its own line, without which the carrier's obligations were fully discharged when it delivered the freight in good condition to its connecting carrier.   We think, even under this claim, the evidence fairly tended to prove that the contract was for a through shipment.   The company, from its conduct, must have so understood it.   When, however, a carrier receives freight to be transported, marked to a particular place, he is *prima facie* bound to carry and deliver at that place.   By accepting the goods so marked he impliedly agrees so to do, and he ought to be answerable for the loss.   *Illinois Central Railroad Co.* v. *Copeland,* 24 Ill. 332; *Illinois Central Railroad Co.* v. *Johnson,* 34 id. 389; *Illinois Central Railroad Co.* v. *Frankenberg,* 54 id. 97.

But it is said the agreement on its face limits the liability of the defendant to its own line.   Even if it should be admitted that such is the fair construction of the bill of lading, it was still a question of fact for the jury and the Appellate Court whether or not that contract was assented to by the shipper.   Whatever may be the rule in other jurisdictions, it is well settled in this State that whether the terms of a special agreement limiting the liability of the common carrier was understood and entered into by the consignor and assented to by him, is a question of fact.   The earlier cases so holding will be found cited in *Chicago and Northwestern Railway Co.* v. *Simon,* 160 Ill. 648.   In that case we said: "By the adjudications of this court the rule is established as a principle of the common law, that where a carrier receives and accepts goods marked to a place beyond the terminus of its own line its receipt for goods so marked is to be construed as a *prima facie* contract to carry and deliver at the point so marked.   *   *   *   Neither can the carrier limit his common law liability safely to deliver such property at the place to which the same is to be transported, by any stipulation or limitation expressed in the receipt given for such property. (Starr & Cur. Stat. chap. 114, sec. 96, and chap. 27, sec. 1.)

By these two sections (the first adopted in 1872 and the second in 1874) the right to limit a common law duty in a receipt was prohibited. It has, however, been recognized by frequent decisions of this and other courts that a common law duty may be limited by express contract. * * * The rule that a limitation of a carrier's liability for safe carriage and delivery of freight beyond the terminus of the carrier's own line may be made by restrictions contained in that part of the bill of lading which may constitute a contract, has been recognized in this State, (citing cases.) Where a contract limiting the liability of a carrier is contained in a bill of lading which in its entirety constitutes both a receipt and contract, the *onus* is on the carrier to show the restrictions of the common law liability were assented to by the consignor, (*Field* v. *Chicago and Rock Island Railroad Co.* 71 Ill. 458; *Boscowitz* v. *Adams Express Co.* 93 id. 523;) and whether there is such assent is a question of fact. The mere receiving the bill of lading without notice of the restrictions therein contained does not amount to an assent thereto,"— citing cases. And in that case it was further held, whether the limitations in the bill of lading were assented to by the consignor was a question of fact determined by the Appellate and trial courts adversely to the appellant. To the same effect are *Illinois Central Railroad Co.* v. *Carter,* 165 Ill. 570, and *Chicago and Alton Railroad Co.* v. *Davis,* 159 id. 53.

If it be conceded that the case of *Black* v. *Wabash, St. Louis and Pacific Railway Co.* 111 Ill. 351, announces a different rule, still the later cases would govern. The *Black case* does, however, hold that all facts and circumstances connected with the execution of the special contract were proper to be considered by the jury. The reasons for imposing the burthen of proof upon the carrier in such case, as distinguished from ordinary cases of contract between parties, will readily suggest themselves. But it is sufficient for the purposes of this case to say that the law is settled ad-

versely in this State to appellant's contention. The parol evidence is admitted, not for the purpose of changing or varying the terms of a written contract, but for the purpose of showing whether the written contract was assented to by both parties.

The tenth condition in the contract of shipment provides that no action shall be brought for damages "unless a claim for such loss or damage shall be made in writing, verified by an affidavit of the party of the second part or their agent, and delivered to the freight claim agent of the party of the first part, at his office in the city of St. Louis, within ten days from the time said stock is removed from said cars; and it is also agreed that if any loss or damage occurs upon a connecting line, then such line shall not be liable unless a claim shall be made in like manner and delivered in like time to some officer or general agent of the line on which the loss or injury occurred." That there was on the part of the connecting carriers gross negligence, amounting to absolute cruelty to the horses, cannot be denied. Nor can it be said that in view of the nature of the injury to the animals the actual damage could by any reasonable degree of diligence have been discovered and sworn to within ten days after they were unloaded, and it cannot therefore be said, as a matter of law, that the foregoing provision was reasonable. (*Baxter* v. *Louisville, New Albany and Chicago Railway Co.* 165 Ill. 78.) But the question of the plaintiff having understandingly assented to that provision having been determined adversely to appellant by the jury and the Appellate Court, he was not barred of his right of action by his failure to comply with it.

The contention that the trial court erred in instructing the jury that the burthen of proof was upon the carrier to show that the plaintiff had assented to the terms and conditions of the contract of shipment is answered by *Chicago and Northwestern Railway Co.* v. *Simon, supra,* and *Illinois Central Railroad Co.* v. *Carter, supra,* and by the still later

cases of *Chicago and Northwestern Railway Co.* v. *Calumet Stock Farm,* 194 Ill. 9, and *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* v. *Patton,* 203 id. 376.

It is also insisted that the trial court erred in refusing to admit in evidence the application of the plaintiff purporting to have been made by the plaintiff to the agent of the company at Council Bluffs. The plaintiff testified, though somewhat indefinitely, that he did not sign the application, and there is no positive evidence that he did. We are unable, however, to see what particular injury resulted to the defendant by the court's refusal to admit it in evidence. It was not materially different from the agreement which was admitted in evidence.

All controverted questions of fact having been conclusively settled adversely to the appellant and questions of law alone being subject to review here, we are of the opinion that the judgment of the Appellate Court must be affirmed.

*Judgment affirmed.*

Mr. JUSTICE CARTWRIGHT, dissenting:

It is the law of this State that a railroad corporation can not limit its common law liability by any stipulation or limitation expressed in ·the receipt given for the property. Section 33 of the act in relation to fencing and operating railroads, in force July 1, 1874, so provides. But a bill of lading may contain provisions and restrictions which, if assented to by the shipper, will amount to a contract, and the carrier may thereby limit its liability to such damage or loss as may arise on its own line. (*Chicago and Northwestern Railway Co.* v. *Simon,* 160 Ill. 648; *Illinois Central Railroad Co.* v. *Carter,* 165 id. 570.) A limitation of that character in a bill of lading is not binding on the shipper unless he knew of and assented to the limitation, and that is a question of fact, as to which the judgment of the Appellate Court is conclusive. (*Chicago and Alton Railroad Co.* v. *Davis,* 159 Ill. 53.) The carrier must show that there was an ex-

press contract for the exemption, and where the limitation is contained in a bill of lading not signed by the shipper, the burden is on the carrier to prove the contract by showing that the shipper assented to the limitation. (*Chicago and Northwestern Railway Co.* v. *Simon, supra.*) That is merely proving that there was a contract, and if the proof is made the limitation in the bill of lading will bind the shipper as effectually as though he had signed it. (*Boscowitz* v. *Adams Express Co.* 93 Ill. 523.) In this case there was an express contract signed by the plaintiff and the agent of the defendant, restricting the defendant's liability to its own line; but it is held that the burden was upon the defendant to prove by other evidence that the plaintiff assented to the terms and conditions of the contract which he signed. I have not been able to discover any good reason for reversing the rule applied to other contracts and transactions, that one who has signed a contract is presumed to have understood and assented to its provisions. The validity of such a contract may be impeached. (*Black* v. *Wabash, St. Louis and Pacific Railway Co.* 111 Ill. 351.) But I cannot agree with the conclusion that there is no presumption that the contract was assented to by the parties to it and that the fact of such assent must be proved by other evidence. The only case where such a rule was applied to a contract which appeared from the facts stated to have been signed by the shipper, is *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* v. *Patton,* 203 Ill. 376, where it was said that in the absence of evidence that the terms of the contract were assented to by the consignor, the presumption followed that he did not assent to the terms of such contract. I think that decision ought not to be followed in this case.

Mr. CHIEF JUSTICE SCOTT, dissenting:

I concur in the views of Mr. Justice CARTWRIGHT above expressed.