## Douglas Field et al., Appellees, v. St. Louis & San Francisco Railroad Company, Appellant.

1. COMMON CARRIERS—*burden to show assent to terms of shipping contract.* In an action to recover for loss or damage to merchandise the burden is upon the carrier to establish the assent of the shipper to the terms of a special shipping contract.

2. EVIDENCE—*what competent upon market value.* In an action to recover for hogs lost in transit, it is competent, as bearing upon the market value of the hogs so lost, to show what was received from the sale of the remaining hogs of the same shipment at the place of destination of the entire consignment.

Action on the case. Appeal from the City Court of East St. Louis; the Hon. W. J. N. MOYERS, Judge, presiding. Heard in this court at the October term, 1909. Affirmed. Opinion filed February 11, 1910.

ALEXANDER FLANNIGEN, for appellant.

S. F. GILMORE and J. M. FREELS, for appellee.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

Appellees brought this suit to recover the value of 40 hogs claimed to have been lost in course of shipment over appellant's road. A trial by jury resulted in a verdict and judgment for appellees, for the sum of $120.75.

Appellant states as reasons why the judgment in this case should be reversed, that the evidence was insufficient to sustain the verdict; that the trial court erred in permitting appellees to introduce certain evidence to show the value of the hogs in question and also in the matter of the instructions given and refused.

The proofs in the record disclose, that on February 7, 1907, one Nelson Field, the father of one of appellees, was at Hardy, Arkansas, buying hogs for appellees and on that day engaged two cars from appellant intending to ship the hogs the next day; that he had one William Johansen assisting him and they loaded

one of the cars on February 9 with 151 hogs, as claimed by appellees; that after they were loaded, Field left Johansen to ship out the other hogs and sign the shipping contract and proceeded to St. Louis, Missouri. The second car was not loaded until February 11. Both Johansen and a man who was assisting the station agent, counted the hogs as they were loaded and found the number to be 140. The second car as soon as loaded was sealed, and Johansen, having signed the shipping contract, started on the train with it. Both carloads were consigned to Evans-Snider-Buel Co., a live stock commission firm at the National Stock Yards, Illinois, for sale on account of appellees and each load was billed out as containing the respective number of hogs as above mentioned.

Appellees sought to prove that on the arrival at its destination of the car shipped on February 9th, only 130 hogs remained in the car, and of the car shipped on February 11th, only 125 reached their destination. The trial court held, however, that as appellees failed to produce as a witness the man who counted the first load on its arrival, they could not recover for any loss claimed to have been sustained as to that load.

The verdict and judgment were only for the loss of the 15 hogs in the second car and it is only with those hogs and that car that we are concerned. The car arrived at Springfield, Missouri, between 3 and 4 o'clock in the morning of February 12th and was taken to the Stock Yards at that place and unloaded before daylight by the assistant foreman, who testified that he only unloaded 126 hogs from the car and that he afterwards reloaded them into another car. Johansen on the arrival at the train at Springfield, was directed by the conductor to go to the train master's office and the hogs were unloaded while he was absent. When this car arrived at the National Stock Yards, the hogs were counted out by it by the night foreman of the stock yards company, who found the car contained only 125 hogs. These hogs were disposed of in the

open market in the usual course of business on the day of their arrival and the following day. The proof was sufficient to sustain the claim of plaintiff that 140 hogs were loaded into the car and that only 125 of them reached the National Stock Yards.

Appellant contends, however, that appellees were bound by the special contract, signed by Johansen, limiting its liability in such a way as to relieve them from responsibility for this loss. Referring to such a shipping contract our Supreme Court said in C. C. C. & St. L. Ry. Co. v. Patton, 203 Ill. 376: "The burden is on the carrier to show that the terms of the contract were assented to by the consignor and in the absence of any evidence the presumption follows that he did not assent to the terms of the contract."

The case of Wabash R. R. Co. v. Thomas, 222 Ill. 337, quotes approvingly and adheres to the doctrine laid down in C. & N. W. Ry. Co. v. Simon, 160 Ill. 648, where it was held that "where a contract limiting the liability of a carrier is contained in a bill of lading which in its entirety constitutes both a receipt and contract, the onus is on the carrier to show the restrictions of the common law liability were assented to by the consignor, and whether there is such assent is a question of fact. The mere receiving the bill of lading without notice of the restrictions therein contained does not amount to such an assent thereto."

In this case the question whether appellees assented to the restrictions imposed by the terms of the contract in question, was submitted to the jury by the instructions, and the proofs were such as to warrant a finding that there was no such assent.

Complaint is made that evidence was admitted to show what the hogs which arrived at the stock yards and composed part of the same shipment, were sold for, to show the market value of the hogs which were lost in transit. It was of course impossible to determine the exact weight and condition of any of the hogs which were lost. We think it was therefore not unreasonable to assume under the circumstances, that

the hogs which were lost were on an average of equal weight and condition with those which were sold. They, of course, had some value and it was not improper as bearing upon that question, for appellees to be permitted to show what the other hogs out of the same lot sold for in the regular course of business in the open market.

Appellant also complains of the instructions given for appellees because they each submitted to the jury the question whether appellees knowingly assented to the limitations imposed by the bill of lading, or shipping contract. It is claimed by appellant that these instructions submitted to the jury the construction of the contract, which was a question of law. The instructions do not reasonably bear this interpretation, but they simply submit to the jury the question whether the provisions of the contract were knowingly assented to by the appellees, and such being the case, they, in the light of the authorities above referred to, correctly stated the law.

Appellant's refused instructions assumed that the shipping contract was binding upon appellees, regardless of whether or not they assented to the provisions thereof and there was no error in refusing them.

The judgment of the court below is affirmed.

*Affirmed.*