Fourth District—April, 1918.    149

Security Trust & Sav. Bank v. Telford et al., 211 Ill. App. 149.

# Security Trust & Savings Bank of Charles City, Iowa, Appellee, v. E. C. Telford and Joseph Telford, Appellants.

1. FRAUD, § 9*—*when party may not say that other party signing agreement was negligent.* A party guilty of fraudulent conduct whereby he induces another to execute a written agreement will not be allowed to impute the negligence to the latter as against his own deliberate fraud even where the parties are dealing at arms' length.

2. SALES, § 51*—*when parol evidence is admissible to show real contract as to warranty of tractor.* Where the purchaser of a tractor is unable, due to failing eyesight, to read an order for the purchase of machinery which contains a warranty with a provision that the retention and use for six days of the machine without giving notice of a failure of warranty within such period constitutes an acceptance of the tractor, and relies, in signing it, on the fraudulent statement of the seller's agent that it contains simply a mere order, parol evidence is admissible to show what the real contract was as to a warranty, and this does not contravene the rule that parol evidence is not admissible to change or vary the terms of a written contract.

3. SALES, § 24*—*when seller's agent is guilty of fraud in procurance of order for tractor.* The agent of the seller of goods is guilty of fraud in the procurance of an order for the purchase of a tractor where the purchaser is unable to read, owing to failing eyesight, and relies upon the agent's statement that the writing is a mere order, when in fact it contains a provision as to warranty at variance with a prior agreement as to warranty and also a provision that it is the only agreement between the parties.

4. BILLS AND NOTES, § 246*—*when note is subject to same defenses in hands of purchaser as if in hands of payee.* A chattel mortgage note, which indicates on its face its nature, is subject to the same defenses in the hands of a purchaser for value before maturity as it would be in the hands of the payee.

Appeal from the Circuit Court of Marion county; the Hon. WILLIAM B. WRIGHT, Judge, presiding. Heard in this court at the October term, 1917. Reversed and remanded. Opinion filed April 5, 1918.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

WILLIAM H. GREEN, STANLEY WATSON and ALBERT WATSON, for appellants.

KAGY & VANDERVORT, for appellee.

PER CURIAM.

On March 7, 1916, the plaintiff obtained a judgment by confession, in vacation, against the defendants upon three promissory notes for a total amount of $2,373.50 and costs. Later on the defendants entered a motion in the Circuit Court of Marion county, Illinois, to vacate said judgment and for leave to plead therein. Leave was granted to the defendants to file pleas to the merits of the case but the judgment was not vacated. The defendants filed the plea of general issue and a special plea. The special plea avers that in the spring of 1912 the Hart-Parr Company sold the defendants a gas tractor engine, and warranted the same sound and fit for pulling plows and for doing defendants' work on their farms and orchards at all times of the year when plowing should be done by draft animals, for which tractor the defendants paid cash $500 and executed their notes for the balance of the purchase price; and then avers that the engine was unsound and not fit to do the work as warranted, and that after repeated attempts to make it do the work it failed and the engine was taken back by Hart-Parr Company, and that thereupon another engine was purchased and the $500 paid was credited upon the second engine, and upon the sale of the second engine Hart-Parr Company agreed that it was sound and fit for pulling plows and for doing defendants' work on their farm and orchard at all times of the year when plowing could be done by draft animals, and that in case the said engine would not do all of the work it was warranted to do the said Hart-Parr Company would take it back and return to the defendants all of the consideration received therefor, and

that the defendants relying upon said warranty made and delivered said notes to the said Hart-Parr Company.

The plea further avers that the said notes were secured by a chattel mortgage and that it was so recited upon the face of the notes.

The plea then avers that the said engine would not and did not do the work as warranted and that the Hart-Parr Company after being notified of the aforesaid facts would not and did not make good the aforesaid warranty made by them. And then avers that the engine was valueless to the defendants. To this special plea the plaintiff filed three replications. The first was that the plaintiff purchased these notes from Hart-Parr Company in the regular course of business for a valuable consideration, and without notice of the claims set out by defendants in their said plea. To this replication a demurrer was sustained.

Plaintiff's second replication to said special plea alleges that the tractor engine was sold to defendants under a written order and warranty, which provided that it was the only agreement expressed or implied between said Hart-Parr Company with the defendants relative to said tractor, and that use by defendants of said engine for six days constituted a complete acceptance of the same and that, in effect, if the engine failed to perform according to the warranty aforesaid said defendants must give the Hart-Parr Company notice as therein specified, and that the defendants accepted the said engine and did not give the notice to the Hart-Parr Company above referred to. The plaintiff's third replication to the special plea sets out a written contract between Hart-Parr Company and the defendants by the terms of which agreement it was provided that Hart-Parr Company should furnish to defendants a tractor engine of the kind described, subject to the warranty printed in said contract, and the defendants were to pay the price of $2,288.39,

which was to be paid in cash $431.39 and the remainder in three notes of $619, secured by a chattel mortgage, and that in the said agreement was a warranty that if properly operated it will develop its rated brake horsepower continually and that on firm level footing it will do the equivalent of as many ordinary work horses, and then provides that should any part, except batteries and belting, prove defective within ten months from delivery through inferior material or workmanship, that such defective part shall be furnished by Hart-Parr Company on board cars at its factory; and further provided that, "If inside of six days from its first use it shall fail to fill the warranty with respect to the development of power, notice shall be given the Hart-Parr Company, at their office at Charles City, Iowa, by registered letter or telegram, stating particularly wherein it fails to fill the warranty." And further provides that the use of the engine after the expiration of the six days named shall be conclusive evidence of the acceptance of the same and full satisfaction to the defendants. It also provides that this is the only agreement, express or implied, between Hart-Parr Company and the purchaser relative to the machinery above mentioned. And then avers that after the making of said agreement defendants received the engine and used it more than six days and gave no notice of any defect therein. To these replications the defendants filed rejoinders, the first of which avers that the execution of the said written order and warranty set forth in the plaintiff's third replication was obtained from the defendants by the said Hart-Parr Company by fraud, in this, that the agent of the said Hart-Parr Company fraudulently represented to the said defendant Joseph Telford that the said writing was merely an order for the gas tractor engine and contained no agreement or warranties of any kind, and that the said engine, if so ordered, would be delivered to the said defend-

ants on the terms and warranties set forth in the second plea of the defendants. And that the said agent of the Hart-Parr Company knowing that the defendant Joseph Telford, was unable to read the writing himself by reason of age and failing sight, and that through his reliance upon the fraudulent statements and representations of the said agent of the said Hart-Parr Company the said defendant Joseph Telford signed said writing. The second rejoinder to the said replication is to the same effect, varying in its terms. To these rejoinders a demurrer was interposed by the plaintiff and the court sustained the demurrer. The defendants then elected to stand by their rejoinders and the cause was tried upon the declaration and plea of general issue.

It further appears that the bill of exceptions has not been properly preserved in this case and was stricken from the files, and the questions involved will have to be determined by the pleadings alone.

It will be observed that the rejoinders aver fraud and false representations in the obtaining of the written agreement that is set up in the replications in bar of defendants' special plea. It is contended by counsel for appellee that the ''Rejoinders specifically say that these supposed verbal warranties and this representation made by C. H. Swanson, the authorized agent of the Hart-Parr Company, was made before the execution of the writing and before the execution of this written order. It was principally for this reason that the Circuit Court sustained a demurrer to the rejoinders''; and argues that inasmuch as the supposed representations were made prior to the signing of the written order for the engine they cannot under any circumstances be considered, and that to consider them would violate the principle; that all agreements and statements made prior to the execution of the order must be considered as having been included therein; and claims that it

is especially true in this case because the written agreement specifically states that all contracts or agreements are contained within this written article. We fully appreciate that the principle of law herein contended for is a correct one, and that if this is a valid agreement entered into by these parties they would be concluded by it, but the rejoinders in this case dispute the validity of this agreement. They say that the agreement presented by these rejoinders was obtained by fraud and false representations as to its contents, and then allege that the defendant Joseph Telford because of failing eyesight and the want of glasses was not able to read it, which plaintiff's agent knew, and knowing that inserted in the agreement provisions that changed the contract entered into between Telford and the agent. If the agreement was procured by fraud and false representations then it is void, and the party procuring it can obtain no benefit therefrom. A party guilty of fraudulent conduct whereby he induces another to execute a written agreement will not be allowed to impute the negligence to the latter as against his own deliberate fraud, even where the parties are dealing at arms' length. *Linington v. Strong,* 107 Ill. 295. "As between the original parties, when it appears that one has been guilty of an intentional and deliberate fraud, by which, to his knowledge, the other has been misled and influenced in his action, he cannot escape the legal consequences of his fraudulent conduct by saying that the fraud might have been discovered had the party whom he deceived exercised reasonable care and diligence." *Howell v. Wyatt,* 168 Ill. App. 656, and cases there cited. It has been determined by this court in the case of *Alfred Shrimpton & Sons v. Dunaway,* 52 Ill. App. 448, that where an agreement was entered into between an agent of the plaintiff and the defendant upon terms agreed upon, that the agent then prepared the agreement but in its preparation made it different

from the real agreement entered into, and the defendant without reading it directed his son to sign it, that it was such a fraud upon the defendant as would avoid the terms of the written contract. Proof tending to show that a certain agreement was made and that thereafter a written agreement was prepared but was not in accordance with the real agreement but contained another and a different agreement, and that before signing it was falsely and fraudulently represented to contain the exact agreement made, is not any violation of the principle that oral evidence cannot be introduced to vary the terms of a written contract. ''We are of the opinion, also, the parol evidence was properly admitted to prove the real contract of the parties, and that the execution of the order evidencing another and different contract was procured by the fraud and circumvention of plaintiffs' agent. This ruling does not contravene the rule that parol evidence is not admissible to change or vary the terms of a written contract, and is the law in this State, as announced by our Supreme Court in repeated decisions, among which is *Black v. Wabash, St. L. & P. Ry. Co.,* 111 Ill. 351.'' *Alfred Shrimpton & Sons v. Dunaway, supra.* It must be borne in mind in this case that the defendant Joseph Telford was unable on account of his failing eyesight to read the agreement, and the representation to him under such conditions would have the same effect as if he was unable to read at all. It has been held in the case of *R. J. Gunning Co. v. Cusack,* 50 Ill. App. 294: ''If the paper, under which the appellant claimed, was misread to Schilling, and he was deceived into signing for a period of three years, when told that it was for only one, the paper was void; *Auten v. Gruner,* 90 Ill. 300; and Schilling had the right to disregard it, certainly at the end of one year, and grant the right to use the wall to the appellee, who would be entitled to the aid of the law to protect him in that use.''

It appears to us that according to the averments of these rejoinders that the agent of the appellee was guilty of the making of false and fraudulent statements as to the contents of this agreement for the purpose of securing the signatures of the defendants thereto, and, if this is true, then under no conditions could he reap any benefit from this fraudulent act, and we think that it was a question of fact to be submitted to the jury as to whether or not he was guilty of the fraud charged. If the fraud charged should be proven, then the agreement would be void and the contract set up in defendants' special plea could be shown to be the real agreement between the parties. This being a chattel mortgage note, as shown by a recital contained in the face of the note, it was subject to the same defenses in the hands of appellee as it would be in the payee.

We are of the opinion that the court erred in sustaining the demurrer to appellants' rejoinders, and the judgment of the lower court is reversed and the cause remanded.

*Reversed and remanded.*