**George L. Banks, Appellee, v. Walker D. Hines, Director General of Railroads, and Wabash Railroad Company, Appellants.**

1. CARRIERS, § 248*—*what are matters of common knowledge as to shipment· of live stock.* It is a matter of common knowledge that railroad companies are advised of approaching storms and of changes in weather conditions, and that when weather conditions are such that railroad companies are unable to transport stock to market, shipments are refused.

2. CARRIERS, § 71*—*when carrier of goods is negligent.* A carrier is guilty of negligence in accepting a shipment when it knows, or ought to know, that it cannot handle the shipment to its destination.

3. CARRIERS, § 181*—*when knowledge of limitations in bill of lading must be shown.* Even if the shipper signs a bill of lading containing limitations on the carrier's liability, the burden is still on the carrier to show by evidence *aliunde* that the restrictions or limitations of the common-law liability contained therein were understandingly assented to by the shipper.

4. CARRIERS, § 178*—*when shipper's assent to limitations is not shown.* Evidence of a shipper that he signed one of the contracts for shipment and the other was signed by his agent, that he has

been engaged in shipping cattle about six years and has had in his possession contracts of this character signed by him in duplicate when shipping cattle, does not establish that he assented to the restrictions of the carrier's liability contained in such contracts.

Appeal from the Circuit Court of Christian county; the Hon. Thomas M. Jett, Judge, presiding. Heard in this court at the October term, 1919. Affirmed. Opinion filed April 27, 1920.

John E. Hogan, for appellant.

John J. Bullington and James L. Drennan, for appellee.

Mr. Justice Waggoner delivered the opinion of the court.

On December 9, 1917, appellee delivered to the Wabash Railroad Company, at Taylorville, Illinois, three carloads of cattle to be transported by it to the National Stock Yards at East St. Louis, for market, and on January 9, 1918, three carloads of hogs to be transported to the Union Stock Yards in Chicago, also for market. It is not disputed that both of these shipments were delayed en route, arriving at their respective destinations later than they should have arrived, and that by reason of such delays appellee sustained losses.

It is the contention of appellee that the delays were the results of negligence and carelessness of appellant. The latter claims that there was no negligence on the part of the railroad company in the operation of its trains engaged in taking either the cattle or hogs to market, but that the delay, in each case, was occasioned by an act of God; that on December 9, 1917, and on January 9, 1918, severe blizzards interfered with transportation preventing prompt deliveries of appellee's stock, and thereby caused whatever losses he sustained.

The evidence shows the issuance and delivery to appellee, by the railroad company, of a shipping contract at the time each shipment was made. Both contracts contained the following clauses:

"It is agreed that neither the party of the first part, or any connecting line, should be responsible for any delay caused by storm, failure of machinery or cars, * * *.

"In consideration of the rate aforesaid, it is further agreed that no claim for damages which may accrue to the party of the second part under this contract shall be allowed or paid by the party of the first part, or sued for in any court, by the party of the second part, unless a claim for such loss or damage shall be made in writing, verified by the affidavit of the party of the second part, or his or their agent, and delivered to the Freight Claim Agent of the party of the first part, at his office in the City of St. Louis, within ten (10) days from the time said stock is removed from said cars; * * *."

On the trial of this case by the court, a jury having been waived, judgment was entered in favor of appellee for $1,045.75 and cost. Appellant submitted, at the conclusion of the evidence, propositions to be held as law, and the same were denied. The denial of the propositions and rendition of the judgment are the errors complained of. The evidence shows the cattle should have reached East St. Louis about nine o'clock Monday morning, December 10, but did not do so until about two o'clock in the afternoon of the following day; that the hogs should have gotten to Chicago Thursday morning, January 10, instead of the next morning at eleven o'clock; that it was cold and snowy when the cattle were loaded and the weather bad all the next day. Henry Buesinger, who shipped cattle from Taylorville on the same train with those of appellee, testified that he went on a train to East St. Louis Monday morning. On account

of the cattle not getting there that day he returned home at night, and again went to East St. Louis Tuesday morning, ·thus showing that there had not been a storm sufficient to stop the operation of trains, not only prior to the time the cattle should have arrived, but up to the time they did arrive. The records of the Illinois Weather Bureau showed that on December 11, the day the cattle got to East St. Louis, twenty-eight hours late, a blizzard· swept over Illinois, with stormy winds, drifting snow and rapidly falling temperature, causing the most general and complete transportation paralysis in many years, if not in the history of Illinois. Notwithstanding this alleged transportation paralysis, the train with the cattle in question reached its destination in the afternoon, and this storm certainly furnishes no excuse for the delay that had taken place prior to its occurrence.

The evidence shows nothing as to weather conditions at the time of shipment of the hogs, but that on the next day, being the day on which the shipment should have gotten to Chicago, the temperature ranged from twenty degrees above to ten degrees below zero, and that the next day it stormed. Appellant proved the weather conditions as above stated, which was not controverted, and then argues that the delays complained of were caused thereby. No witness testified as to the cause of either delay. The reasons, if any, for the delays in the shipments are known to the trainmen who had charge of the trains that handled the stock, but none of them were called as witnesses or their absence accounted for. It is a matter of common knowledge that railroad companies are advised of approaching storms and of changes in weather conditions, and that when weather conditions are such that railroad companies are unable to transport stock to market, shipments are refused. A carrier is guilty of negligence in accepting a shipment when it knows, or ought to know, that it

cannot handle it to its destination in a reasonable time. *Mueller Grain Co. v. Lake Erie & W. R. Co.,* 213 Ill. App. 114-115, and cases cited.

The writer of appellant's brief says that "we understand the rule of law to be that the burden is upon us to establish the contract and knowledge of its contents on appellee's part.' We believe, in this case, that we are fully up to the requirements of the law in this regard and show that the signature to the contract was authorized by appellee; that he was familiar with the terms of the contract and is bound thereby," and then particularly calls attention of the court to the case of *Black v. Wabash, St. L. & P. Ry. Co.,* 111 Ill. 351 (361). To be within the rule laid down in that case avails nothing, since the Supreme Court in a later case (*Illinois Match Co. v. Chicago, R. I. & P. Ry. Co.,* 250 Ill. 396 [401], referring to it, says: "That decision was overruled in *Wabash R. Co. v. Thomas,* 222 Ill. 337, where it was held that even if the shipper signs the bill of lading containing limitations on the liability of the carrier, the burden is still on the carrier to show by evidence *aliunde* that the restrictions or limitations of the common-law liability contained therein were assented to by the shipper. Of course, this does not mean that there must be a verbal contract in addition to the written one, but means that the evidence must show that the contract was understandingly entered into by the shipper and its limitations assented to."

The only testimony in regard to the execution of the contracts or knowledge of their contents was that given by appellee when called as a witness by appellant. Appellee testified that he signed the contract in reference to the shipment of the cattle; that the other contract was signed by some one authorized by him to ship the hogs; that he has been engaged in the shipping of stock about six years, and has had in his possession contracts of this character signed by him

in duplicate when shipping hogs. This testimony does not establish that appellee assented to the restrictions, upon appellant's liability, contained in the contracts. *Baltimore & O. S. W. R. Co. v. Fox,* 113 Ill. App. 180 (187).

The judgment entered in the circuit court was right, and is affirmed.

*Judgment affirmed.*